IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

TYRONE C. GRANT,                          )
                                          )
                Plaintiff,                )
                                          )
vs.                                       )          Case No. 5:10-cv-3457-TMP
                                          )
WESFAM RESTAURANTS, INC.; RICH            )
WYCKOFF; THOMAS DOCKERY;                   )
DAVID OAKLEY,                             )
                                          )
                Defendants.               )

MEMORANDUM OPINION

This cause is before the court on the motion to dismiss first filed by defendants on January 14, 2011, and renewed on February 16, 2011 (Doc. 20). Following the filing of the initial motion, the plaintiff filed an amended complaint to replace and supplant the original complaint, and he filed a response in opposition to the motion to dismiss. (Doc. 26). On due consideration, the motion to dismiss will be granted in part and denied in part as more specifically explained below.

*I. Claims Under Title VII*

In their motion to dismiss, defendant Wesfam argues that plaintiff's Title VII claims for discriminatory denial of promotions that occurred before December 2008 are time barred because plaintiff did not file a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the alleged discriminatory events. Defendants Wyckoff, Dockery, and Oakley all argue that they are not proper Title VII defendants because they were not plaintiff's employer for purposes of Title VII liability. In opposition to the motion to dismiss, plaintiff asserts that his claims

for denial of promotions that occurred in May and July 2008 are "continuing" violations for which his May 2009 EEOC charge was timely.  Alternatively, he contends that he is entitled to equitable tolling or estoppel against assertion of the Title VII 180-day precondition to suit.  As for the individual defendants, he argues that it is proper to sue them in their "official capacities" as agents of Wesfam.  The court agrees that plaintiff's Title VII claims against the individual defendants must be dismissed, and that his claims for discriminatory denials of promotion occurring more than 180 days prior to his May 4, 2009, EEOC charge,[1] are time barred.

In his amended complaint, plaintiff alleges that he was passed over for promotion to a supervisor's position three times, in May, July, and December, 2008.  He wrote a letter to the EEOC on May 4, 2009, which the court will assume constitutes a sufficient filing to stop the running of the 180-day deadline for filing with respect to "discrete" discriminatory events.  As the Eleventh Circuit has explained:

> Before filing a Title VII employment action, the plaintiff must first exhaust her administrative remedies beginning with filing a discrimination charge with the EEOC.  Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  In a non-deferral state such as [Alabama], the plaintiff must file the EEOC charge within 180 days of the date of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1).  *The discriminatory decision not to promote an employee is a discrete act that triggers the 180-day period in which to file a charge of discrimination.*  See Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S. Ct. 2162, 2169, 167 L. Ed. 2d 982 (2007).  Furthermore, "discrete discriminatory acts are not actionable if time barred."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002).  The plaintiff also must file her complaint within 90 days of exhausting her administrative remedies and receiving her "right-to-sue" letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1); Green v. Union Foundry Co., 281 F.3d 1229, 1233-34 (11th Cir. 2002).

---

[1]  For purposes of this motion, the court will assume (without deciding) that plaintiff's letter to the EEOC on May 4, 2009, is a charge of discrimination compliant with the statute.

Bennett v. Chatham County Sheriff Department, 315 Fed. Appx. 152, 161 (11th Cir., Nov. 4, 2008) (Italics added for emphasis).  Because plaintiff filed his charge with the EEOC no earlier than May 4, 2009, as alleged in the complaint, any event before November 5, 2008, would be outside the 180-day window for filing a charge.  Thus, insofar as plaintiff complains about discriminatory denials of promotions in May and July 2008, they are time barred.

Further, the court is unpersuaded that equitable tolling or estoppel preserve these claims despite the time bar.  As argued in his opposition to the motion to dismiss, plaintiff claims that he is entitled to equitable tolling, waiver, or estoppel with respect to the running of the 180-day filing period because, "[e]quitable tolling/waiving or estoppel is appropriate under these extraordinary circumstances where Mr. Grant was forced to represent himself to obtain unemployment compensation because the Defendants maliciously contested this right and he endured a hostile work environment."  (Doc. 26, p. 5).  Also, he asserts that the defendants either waived or are estopped from asserting the time deadline because, "Defendants failed to assert the exhaustion issue (despite receiving the "Notice of Charge of Discrimination" just after the 180 day time limit) and therefore equitable principles would require Defendants be estopped from asserting that defense now before this court, or alternatively, that they have waived this defense as they failed to raise it before the EEOC."  (Doc. 26, p. 5).  Neither of these arguments, however, saves plaintiff's claims for denials of promotions prior to November 2008.  Equitable tolling requires a showing of extraordinary circumstances beyond the control of the plaintiff and which are unavoidable even with diligence. The court of appeals has written:

Under the doctrine of equitable tolling, "plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). The Supreme Court has stated that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 127 S. Ct. 1091, 1100, 166 L. Ed. 2d 973 (2007). It is "appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999).

Robinson v. Schafer, 305 Fed. Appx. 629, 630 (11th Cir., Dec. 30, 2008). The circumstances identified by the plaintiff in this case are not extraordinary. The fact that he was unrepresented by counsel in his attempts to gain unemployment benefits is not unusual, and it is irrelevant to the running of the time deadline for the promotions that occurred in May and July. From that time until his termination on December 16, 2008, plaintiff was employed and not seeking benefits. Likewise, the alleged fact that he suffered with a racially hostile work environment during that period does not excuse his failure to file a charge with the EEOC. Plaintiffs ordinarily are expected to pursue their EEOC remedies notwithstanding still being employed with the alleged discriminator.

Also, the facts alleged by plaintiff do not support either waiver or equitable estoppel against the defendants. Defendants have not waived the 180-day time limit, because it has been asserted in their answer to the complaint as well as in this motion. They are not estopped from asserting the defense because there is no allegation that the defendants have engaged in any conduct that prevented the plaintiff from timely pursuing the claims before the EEOC. Simply put, claims arising from discriminatory denials of promotions prior to November 2008 are time barred.

To the extent that plaintiff has attempted to sue Wyckoff, Dockery, and Oakley in their *individual* capacities, they are not proper defendants with respect to a Title VII claim. Relief under

4

Title VII is against the "employer," not the employees alleged to have engaged in the discriminatory conduct.  For example, the court of appeals has said:

> We have held that individual capacity suits under Title VII are inappropriate because "[t]he relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."  Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991).  Additionally, we have stated that "there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." Id. at 776.

James v. Montgomery Regional Airport Authority, 181 Fed. Appx. 930, 931 (11th Cir., May 25, 2006).  Thus, the three individual defendants are not suable under Title VII in their individual capacities.

Nor is it necessary to sue them in their *official* capacities.  Suits against agents in their official capacities is simply another way of suing the employer they represent.  While such suits may once have served a purpose in seeking relief against public employers, they have never been necessary with respect o private employers, such as Wesfam in this case.  Suing three employees of Wesfam in their official capacities is redundant and potentially confusing to the jury that may one day hear this case.  The presence of Wesfam as the employer and named defendant adequately protects plaintiff's remedies under Title VII, and the claim against Wyckoff, Dockery, and Oakley in their official capacities also is due to be dismissed.

In sum, therefore, all Title VII claims against Wyckoff, Dockery, and Oakley, in whatever capacities they are sued, are due to be dismissed.  Further, all Title VII claims against plaintiff's employer, Wesfam, accruing prior to November 2008 are time barred and due to be dismissed.

*II.  Claims under § 1981*

Plaintiff also has sued Wesfam and the three individual defendants, alleging (in part) that the denial of promotions in May, July, and December 2008 also violated his rights under 42 U.S.C. § 1981 to enter into contracts free of racial discrimination.  He contends that, for purposes of § 1981, his denial of promotions was racially motivated and discriminatory.  Defendants seek dismissal of these particular claims on the basis that they are subject to a two-year statute of limitation, which expired prior to the filing of the complaint in this action on December 14, 2010.  Plaintiff responds that the promotion claims under § 1981 are subject to the four-year statute of limitation provided in 28 U.S.C. § 1658.

The Eleventh Circuit seems to have answered this question in Price v. M & H Valve Co., 177 Fed. Appx. 1 (11th Cir., April 7, 2006), where it held that discriminatory denial of promotion claims pre-existed the 1991 amendments to § 1981 and, therefore, remain subject to the two-year limitation.  The court said:

> In 1990, Congress enacted § 1658(a), which created a default four-year limitations period for federal causes of action created after that date.  See 28 U.S.C. § 1658.  One year later, as part of the Civil Rights Act of 1991, Congress amended § 1981 to include a cause of action for discrimination in the terms and conditions of employment as well as discrimination in the making and enforcement of contracts. See 42 U.S.C. § 1981.

> The Supreme Court subsequently determined in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 1845, 158 L. Ed. 2d 645 (2004), that Congress's 1990 enactment of § 1658 changed the limitations period to four years for some claims under § 1981.  See id. at 377-80, 124 S. Ct. at 1842-44.  The Supreme Court also explained that, to the extent that the Civil Rights Act of 1991 created new causes of action not previously cognizable under § 1981, such claims are subject to the four-year "catch-all" statute of limitations of § 1658.  See id. at 380-83, 124 S. Ct. at 1844-45.

6

We, therefore, must determine whether Price's § 1981 claim was cognizable before the effective date of the four-year "catch-all" statute of limitations under § 1658, and, thus, subject to the two-year limitation period.  Under Patterson v. McLean Credit Union, 491 U.S. 164, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989), superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004), which applied to § 1981 before the amendments contained in the Civil Rights Act of 1991, a failure-to-promote claim was actionable under § 1981 if the promotion rose "to the level of an opportunity for a new and distinct relation between the employee and the employer."  Id. at 185, 109 S. Ct. at 2377.  Because Price was asserting that M & H Valve failed to promote him because of his race, we conclude that his § 1981 claims were cognizable under Patterson and, thus, time-barred under Alabama's two-year statute of limitations.

Id. at 6-7; see also Saunders v. Emory Healthcare, Inc., 360 Fed. Appx. 110 (11th Cir., Jan. 11, 2010)("failure-to-promote claim was cognizable under § 1981 prior to the Civil Rights Act of 1991").

The law appears to be well established that failure-to-promote claims existed before the 1991 amendments to § 1981 and, therefore, remain subject to the two-year limitation period borrowed from Alabama law.  Plaintiff's claims for denials of promotions in May and July 2008 are clearly time barred by the expiration of the two-year period prior to the filing of the complaint on December 14, 2010.  His claim with respect to the third promotion that he was denied alleges:

> In late November or sometime in December 2008, Defendants Wesfam Restaurants Inc. and Burger King Corporation promoted another white general manager, Mrs. Rose Hancock to a supervisor position.

(Doc. 16, p. 11).  The vague reference to the denial occurring "sometime in December" leaves open the possibility that this claim is not time barred.  While the court does not agree that, for accrual purposes, the claim was a "continuing violation" until the last day of his employment, the complaint

does allege that he was not terminated until December 19, 2008.  Although it seems unlikely, it remains possible under the allegations of the complaint that the actual denial of the promotion occurred *after* December 14, 2008, and before his termination on December 19, 2008.  If the facts ultimately support that circumstance, the December 2008 denial of promotion would not be time barred.  However, if the evidence indicates that the denial of the promotion (i.e., the date the promotion was given to someone else) was *before* December 14, 2008, it too would be time barred by the expiration of the two-year limitation before the filing of the complaint on December 14, 2010.  At this time, the court cannot say as a matter of law that the December failure to promote is time barred, and the motion to dismiss as to this particular claim will be denied.  The motion will be granted as to claims arising out of the May and July 2008 failures to promote.

### III.  Equal Pay Act Claims

Defendants argue that plaintiff has failed to allege that he was subjected to discrimination in pay on the basis of *gender*, as distinct from race, and therefore, has failed to allege a claim for relief under the Equal Pay Act.  At paragraphs 28, 29, and 30 of the factual allegations in the complaint, however, the plaintiff alleges, respectively, that "[a]lthough he was routinely required to work more hours than white male and *female* general managers, Mr. Grant received less compensation than them"; "Mr. Grant's salary was approximately $8,000.00 to $30,000.00 less per year than the white male and *female* general managers"; and "[t]his pay disparity was despite the white general managers and *female* managers working fewer hours than Mr. Grant."  (Italics added for emphasis).  Despite these factual allegations, plaintiff never actually states a claim (except for retaliation) under the Equal Pay Act.  Count Three of the complaint is the only statement of a claim

that refers to the Equal Pay Act, and both the heading of that count and paragraph 122 make clear that the claim alleged is one for retaliation only, not actual pay discrimination.  Paragraph 122 reads:

> Defendants unjustifiably criticized Mr. Grant's job performance, wrongfully suspended Mr. Grant, wrongfully denied a request for a transfer to another location, wrongfully failed to promote, lied to Mr. Grant about the purported reason for his suspension, wrongfully terminated his employment, and maliciously provided false information to Athens Police Department and the District Attorney's office in an attempt to limit or deny liability for civil rights abuses which Mr. Grant complained about.  Defendants undertook each of the acts adversely affecting Mr. Grant as alleged above in reprisal and retaliation for Mr. Grant's opposition of practices made illegal by Title VII and federal law. This conduct violated 42 U.S.C. § 2000e-3(a) and Mr. Grant has been subjected to retaliation by Defendants in violation of Title VII, the Equal Pay Act, and 42 U.S.C. § 1981.

(Doc. 16, p. 21).  Thus, the court agrees that the only Equal Pay Act claim brought before the court is one for retaliation.  The motion to dismiss is technically correct with respect to the argument that the complaint fails to allege a claim of pay discrimination under the Equal Pay Act, because the complaint appears to allege *only* an Equal Pay Act *retaliation* claim.  To the extent the defendants' motion seeks dismissal of the retaliation claim on the basis that the complaint fails to allege sexual (as distinct from racial) discrimination, the motion is due to be denied.  Thus, the only claim under the Equal Pay Act now before the court is a retaliation claim, and only a retaliation claim.  Wesfam's motion to dismiss the Equal Pay Act retaliation claim is due to be denied.

The motion to dismiss by defendants Wyckoff, Dockery, and Oakley, however, is due to be granted because the plaintiff's "employer" is the only proper defendant suable under the Equal Pay Act.  As is true of claims under Title VII, the Equal Pay Act provides a remedy only against the aggrieved employee's "employer," not co-employees that may have been involved in the alleged

9

retaliation.  Consequently, while the plaintiff may proceed with his Equal Pay Act retaliation claim against Wesfam, it is due to be dismissed as to the three individual defendants.

### IV.  State-Law Defamation Claims

Plaintiff alleges that the defendants, acting jointly, defamed him by accusing him of a crime, specifically in comments to (1) attorney Brian C. Jones, (2) the Athens Police Department and the Limestone County District Attorney's Office, (3) the Alabama State Department of Industrial Relations Unemployment Compensation Agency, (4) certain named co-employees of the plaintiff (and employees of Wesfam), and (5) unnamed and apparently unknown other persons.  The defendants' motion to dismiss asserts that the statements made to Jones, the Athens Police Department, the Limestone County District Attorney's Office, and the Department of Industrial Relations are all privileged and cannot be the basis for a defamation.  Further, the motion argues that allegations of purported defamatory statements made to unknown persons are legally insufficient to state a claim.

Defendants contend that their conversations with attorney Brian C. Jones were within an anticipated attorney-client relationship and, therefore, privileged communications.  The plaintiff alleges in the amended complaint, however, that Jones, although an attorney, was contacted in his capacity as  a friend of the defendants.  (Doc. 16, ¶ 76).  Although not entirely clear, a fair reading of this allegation allows the inference that the communications between defendants and Jones were not intended to be part of an attorney-client communication, but merely a discussion among friends.  Assuming this factual allegation of the complaint to be true, as the court is required to do at this

stage of the case, the court cannot say as a matter of law that the statements made to Jones were necessarily privileged.  The motion to dismiss on this ground will be denied.

Plaintiff also alleges that on December 23, 2008:

> Defendant Wyckoff and Defendant Dockery conspired together and *intentionally and with malice presented false information* to Lt Floyd Johnson that Mr. Grant was the only manager on duty when there were missing voids from November 22nd through December 16th 2008. Defendants intentionally and with malice presented false information concerning whether Mr. Grant could explain the "missing voids" and lack of receipts.  (Italics added).

He alleges, in effect, that Wyckoff and Dockery, acting as agents of Wesfam, told the Athens police investigator that plaintiff had stolen money from them.  There is no factual allegation that any of these defendants made similar statements to anyone in the Limestone County District Attorney's Office.  The only factual allegation of a defamatory statement to law enforcement is the allegation concerning the December 23, 2008, statement to Lt. Floyd.

In <u>Tidwell v. Winn-Dixie, Inc.</u>, 502 So. 2d 747 (Ala.1987), the Alabama Supreme Court held that a store manager's statement to police that the plaintiff had passed through the check-out register without paying for groceries in her possession was protected by a "conditional privilege" against a defamation action.  The court wrote:

> [T]he store manager's statement to the police officer could have been found to be within his conditional privilege.  This Court discussed the scope of the conditional privilege in <u>Fulton v. Advertiser Co.</u>, 388 So. 2d 533, 537 (Ala.1980):
>
> > " ' "Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is

> made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice.
> * * *
>
> The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken." '

"Willis v. Demopolis Nursing Home, Inc., 336 So. 2d 1117 (Ala.1976), quoting Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290 (1923).

> " 'The question of whether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge.'

" Willis, supra."

Id. at 748.  While reporting a crime to police is pursuant to a moral duty and within the conditional privilege, a statement loses its privileged character if it is not made in good faith, but with actual malice.  Actual malice can be inferred from knowledge on the part of the speaker that his statement is false.  See Wiggins v. Mallard, 905 So. 2d 776, 788 (Ala., 2004)("We do hold, ..., that a private-party-defamation plaintiff may overcome a qualified-immunity defense with testimony indicating that the defendant intentionally lied about the plaintiff.  Thus, common-law malice may be shown, not only by 'evidence of hostility, rivalry, the violence of the language, the mode and extent of publication,' but, also, by proof of 'the recklessness of the publication and prior information regarding its falsity.'")(Italics in original).

Although whether a statement is conditionally privileged is a question of law for the court, facts in dispute concerning the motive and malice of the speaker may still exist.  In this case, the

plaintiff alleges that defendants Wyckoff and Dockery maliciously lied to police authorities, accusing plaintiff of theft, in order to cover-up their own racial discrimination against him. Whether these facts will ultimately prove out remains to be seen, but the court must assume the allegations to be true at this stage of the case. Consequently, as to defendants Wesfam, Wyckoff, and Dockery, the motion to dismiss the defamation claim is due to be denied. Because plaintiff has not alleged that defendant Oakley was involved in making defamatory statements to police, his motion to dismiss on this point will be granted.

Next, the plaintiff seems to agree that the claim of defamation stemming from the defendants' opposition to unemployment benefits for the plaintiff is due to be dismissed. (Doc. 26, ¶ 30). In Watters v. Louisiana Pacific Corp., 156 Fed. Appx. 177, 179 (11th Cir. 2005),[2] the Eleventh Circuit

---

[2] To the extent it might be argued that Watters is an unreported opinion with no precedential force, the court finds authority in Alabama law also for concluding that statements made in proceedings before the Alabama Department of Industrial Relations are absolutely privileged. First, Ala. Code § 25-4-116 (2005) explicitly states that all "communications" sent to the director of the Department "in connection with the requirements and administration of this chapter, shall be absolutely privileged and shall not be made the subject matter or basis for any civil action for slander or libel in any court." Second, unemployment compensation contests before the Department of Industrial Relations can be characterized as "quasi-judicial" proceedings in that the employer and employee are contesting whether there is a basis for denying benefits to the employee due to misconduct. Such a proceeding involves a hearing before a neutral fact-finder, findings of fact, and the application of law to the facts. The decision is appealable to a court. Because the proceedings are "quasi-judicial," statements made in connection with them are absolutely immune under Webster v. Byrd, 494 So. 2d 31 (Ala. 1986). In that case, dealing with communications made in a "quasi-judicial" tenure hearing, the Alabama Supreme Court held:

The courts are divided as to whether an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Some courts recognize only a conditional privilege. Gardner v. Hollifield, 97 Idaho 607, 549 P.2d 266 (1976); Elder v. Holland, 208 Va. 15, 155 S.E.2d 369 (1967). The majority view, and the view we now adopt, is that an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Brubaker v. Board of Education, School District 149, Cook County, Illinois, 502 F.2d 973 (7th Cir. 1974), order clarified, 527 F.2d 611 (7th Cir. 1975), cert. den., 421 U.S. 965, 95

Court of Appeals stated affirmatively that an "Alabama statute provides that communications made in connection with the administration of the Department of Industrial Relations are absolutely privileged and cannot form the basis for an action for slander or libel in any court." See Ala. Code § 25-4-116 (2005); see also, Dixon v. Economy Co., 477 So. 2d 353, 354 (Ala.1985). Thus, the motion to dismiss this allegation of defamation also will be granted.

Finally, defendants contend that the allegations that they defamed plaintiff in statements to unknown people fails to state a claim, and the court agrees. In order to state a claim for relief, the plaintiff must allege facts from which it can be plausibly inferred that he suffered an actual legal injury. To allege that the defendants *may* have made defamatory statements to other people unknown to plaintiff simply fails to allege that any legal injury occurred at all. Such an allegation is nothing more than asserting that the plaintiff *may* have been injured, but he just does not know for sure. Insofar as the motion to dismiss seeks dismissal of the vague allegation that defendants defamed plaintiff to unknown people at unknown times under unknown circumstances is due to be granted.[3]

## V.  Invasion of Privacy-False Light Claim

Plaintiff alleges that the defendants committed the tort of invasion of privacy by placing him in a false light. Particularly, he alleges that they made false statements about his employment status

---

S. Ct. 1953, 44 L. Ed. 2d 451 (1975); Mock v. Chicago, R.I. & P.R. Co., 454 F.2d 131 (8th Cir. 1972); Roberts v. Lenfestey, 264 So. 2d 449 (Fla.Dist.Ct.App.1972).

Id. at 34.

[3]  To be clear, the court does not read the motion to dismiss as challenging the plaintiff's allegation that the defendants made defamatory statements about him to his former co-employees, as listed in the complaint. That claim remains active in the case.

in a manner that invaded his right to privacy.  The defendants contend in the motion to dismiss that

the plaintiff's complaint fails to allege any fact showing that they made any statements that cast the

plaintiff in a false public light.

The tort of invasion of privacy under Alabama law cover four distinct forms of harm:

> (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to
> private information about the plaintiff that violates ordinary decency; (3) putting the
> plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4)
> appropriating some element of the plaintiff's personality for a commercial use.

Martin v. Patterson, 975 So. 2d 984, 992 (Ala.Civ.App., 2007)(quoting Johnston v. Fuller, 706

So. 2d 700, 701 (Ala.1997)).  Each form of harm has its own distinct elements the plaintiff must

allege and prove.  See Regions Bank v. Plott, 897 So. 2d 239, 243 (Ala., 2004).

In this case, plaintiff alleges the third form of harm, that the defendants put him in a false

position in the public eye.  For a false-light claim, the Alabama Supreme Court has described the tort

as follows:

> Regarding the elements of a false-light claim, this Court has held:
>
> > ""One who gives publicity to a matter concerning another that places
> > the other before the public in a false light is subject to liability to the
> > other for invasion of his privacy, if
> >
> > > ""(a) the false light in which the other was placed
> > > would be highly offensive to a reasonable person, and
> > >
> > > " "(b) the actor had knowledge of or acted in reckless
> > > disregard as to the falsity of the publicized matter and
> > > the false light in which the other would be placed."""

Butler v. Town of Argo, 871 So. 2d at 12 (quoting Schifano v. Greene County Greyhound Park, Inc., 624 So. 2d 178, 180 (Ala.1993), quoting in turn RESTATEMENT (SECOND) OF TORTS § 652E (1977)).

"A false-light claim does not require that the information made public be private," but it does require that "the information ... be false."   871 So. 2d at 12.   See RESTATEMENT (SECOND) OF TORTS § 652E, cmt. a. (1977).   Thus, falsity is the *sine qua non* of a false-light claim.   Moreover, unlike defamation, truth is not an affirmative defense to a false-light claim; rather, "falsity" is an element of the plaintiff's claim, on which the plaintiff bears the burden of proof. Ray, Let There be False Light, 84 MINN. L.REV. at 736 ("false light plaintiffs therefore bear [a] heavier burden [than defamation plaintiffs] because they must make an affirmative showing of falsity rather than leaving it to defendants to justify the offensive statement").

Regions Bank v. Plott, 897 So. 2d 239, 244 (Ala. 2004).  As described, the alleged tortfeasor must have engaged in conduct that can reasonably be understood as "giv[ing] publicity to a matter" of private interest to the plaintiff.  Once again, in Regions Bank, the Alabama Supreme Court held that the "publicity" requirement of a false-light claim requires proof of communication of a falsity to the public at large, or to a group of people so large that one must assume that it will become widely known.  The court said:

> In the context of a false-light claim, "giving publicity" is "making a 'matter ... public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'"  Ex parte Birmingham News, Inc., 778 So. 2d 814, 818 (Ala. 2000) (quoting RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a. (1977) (emphasis added)).   "Publicity is a concept more difficult to prove than [mere] publication," which is an element of a defamation claim.   Gary v. Crouch, 867 So.2d 310, 318 n. 6 (Ala. 2003).   The "publicity" element is not satisfied by the "'communicat[ion of] a fact ... to a single person or even to a small group of persons.'"   Birmingham News, 778 So. 2d at 818 (quoting RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a. (1977) (emphasis added in Birmingham News; some emphasis omitted)).

Id. at 245.

The defendants correctly note that the complaint simply fails to allege that the defendants engaged in any conduct that might rise of the level of causing publicity of the accusations against the plaintiff.  It is not enough to say, as in a defamation claim, that the defendants communicated the false accusations to a friend or the police or a small group of plaintiff's co-workers.  The "publicity" element of the tort requires that the defendants engage in wide-spread communication of the false accusations to the public at large.  Although it is true that plaintiff alleges that the accusations against him were aired publicly on a television news program, he clearly has not alleged that it was defendants who caused this airing to occur.  At paragraph 115 of the amended complaint, plaintiff asserts:

> Additionally Mr. Grant has suffered extreme humiliation, injury to reputation and degrading treatment because he was featured on Channel 19 in Huntsville news, as a "fugitive" directly because of the Defendants' false allegations, defamation, invasion of privacy, outrage/intentional infliction of emotional distress, negligence and abuse of process.

The only additional factual allegation supportive of this claim is at paragraph 140 of the amended complaint, which alleged, "Defendants as listed herein repeatedly gave publicity to Mr. Grant's alleged theft that placed Mr. Grant before the public as a common thief and criminal."  The vague and conclusory allegation that the defendants "repeatedly gave publicity" to the accusations against the plaintiff, without more factual specificity, simply fails to allege sufficient *facts* to raise the claim above mere speculation to a level of plausibility.  Cf. American Dental Association v. Cigna Corp. 605 F.3d 1283, 1289 (11th Cir. 2010); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.

17

1955, 167 L. Ed. 2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 73 L. Ed. 2d 868 (2009).  At no point does the plaintiff allege that the defendants caused the television station to broadcast information about his purported "fugitive" status.  He does not allege that they supplied the information to the television station or assisted with the broadcast.  One cannot infer from the fact that a television broadcast carried information about the accusations against the plaintiff that the defendants caused that publicity.  There must be some other allegation of fact indicating that one or more of the defendants did something to cause the publicity; not simply that the publicity happened, perhaps, independently of anything they did.  The motion to dismiss the plaintiff's false light claim will be granted.

### VI.  Tort of Outrage/Intentional Infliction of Emotional Distress

Defendants also move to dismiss the plaintiff's claims for intentional infliction of emotional distress, also known as the tort of outrage.  Since American Road Service Co. v. Inmon, 394 So. 2d 361 (Ala. 1980), Alabama law has recognized the so-called tort of outrage, or more correctly understood as the tort of intentional infliction of emotional distress.  See Thomas v. Williams, 21 So. 3d 1234, 1237 (Ala. Civ. App., 2008)("the tort of outrage is the same cause of action as intentional infliction of emotional distress").  It is defined as follows:

> "[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.  The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it.  Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme.... By extreme we refer to conduct *so outrageous in character and so extreme in degree as to go beyond all possible bounds of*

*decency, and to be regarded as atrocious and utterly intolerable in a civilized*
*society.* ..."

Wal-Mart Stores, Inc. v. Smitherman, 872 So. 2d 833, 840 (Ala. 2003)(italics in original)(quoting

American Road Service Co. v. Inmon, 394 So. 2d 361, 365 (Ala.1980)).  The elements of such a

claim are:

> "'The tort of outrage requires that: (1) the actor intended to inflict emotional distress,
> or knew or should have known that emotional distress was likely to result from his
> conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions
> caused the plaintiff distress; and (4) ... the distress was severe. With respect to the
> conduct element, this Court has stated that the conduct must be "so outrageous in
> character and so extreme in degree as to go beyond all possible bounds of decency,
> and to be regarded as atrocious and utterly intolerable in a civilized society."'"

Thomas v. Williams, 21 So. 3d 1234, 1237 (Ala. Civ. App., 2008)(quoting Gunter v. Huddle, 724

So. 2d at 547 (quoting Harris v. McDavid, 553 So. 2d 567, 569-70 (Ala.1989))).

In this case, the court is not persuaded that the events alleged in the complaint are sufficiently

"atrocious and utterly intolerable in a civilized society," as required to state a claim.  In essence, the

plaintiff alleges that the defendants engaged in egregious racial discrimination and harassment of the

plaintiff while he was employed with Wesfam, and then falsely and maliciously accused him of theft,

both to the Athens Police Department and the Alabama Department of Industrial Relations, in order

to cover up their own racial discrimination.  Even assuming these allegations to be true, they fail to

rise to the level of being so utterly outrageous and atrocious as to be unacceptable in civilized

society.  Racial discrimination in employment, while unfortunate and prohibited by federal law,

remains all too common and "accepted" in civilized society.  Likewise, the Alabama courts have

suggested that false reports of crime, even made with malice, do not rise to the level necessary to state the tort of outrage.  See Hurst v. Cook, 981 So. 2d 1143, 1157 (Ala. Civ. App., 2007).  In Hurst, the Hursts alleged that Mike Cook made a false and malicious report to police, accusing them of forging his signature on a document, and they sued him for the tort of outrage.  Cook moved for summary judgment, and the Alabama Court of Civil Appeals concluded:

> Even if Mike Cook's decision to make a police report was *motivated by malice and his allegation of forgery was entirely false*, such actions would not rise to the level of being a proper basis for the tort-of-outrage counterclaim.  The circumstances surrounding the making of the police report and the subsequent investigation are far from the most egregious of circumstances, and it is impossible to conclude that Mike Cook's "'conduct [was] so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'"

Id. at 1157.  Thus, even a malicious and knowingly false report to police accusing another of a crime is not sufficiently outrageous to support the tort claim.  Given the privileged nature of proceedings before the Department of Industrial Relations, as discussed above in footnote 2, the same must be true with respect to accusations and statements made in connection with unemployment compensation contests.

In sum, none of the conduct allegedly engaged in by the defendants is sufficiently outrageous.  False reports of crime, racial discrimination, and false accusations of misconduct are not so utterly atrocious as to be unacceptable in civilized society.  Accordingly, the defendants' motion to dismiss plaintiff's claim for outrage/intentional infliction of emotional distress is due to be granted.

20

*VII.  Civil Conspiracy*

Lastly, defendants move to dismiss plaintiff's claims, both under 42 U.S.C. § 1985(3) and Alabama law, that they have engaged in an actionable civil conspiracy against him by subjecting him to racial discrimination and harassment, retaliation, a false accusation of crime, and casting him in a false and defamatory public light.  He alleges that these actions were taken to cover up their racial discrimination against the defendant and in violation of his right to equal protection of law.   The defendants contend that the civil conspiracy claims must fail under Alabama law because no actionable wrong can be shown.

The instant motion to dismiss seems to seek dismissal only of plaintiff's civil-conspiracy claims under Alabama state law, not § 1985(3).[4]  Although plaintiff clearly referred to § 1985(3) as one of the bases for his conspiracy claims (Doc. 16, ¶¶ 169.2, 169.3, and 169.5), the motion to

---

[4]  42 U.S.C. § 1985(3) provides in relevant part, the following:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985(3) is an entirely remedial statute.  "'Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates.'"  Dickerson v. Alachua County Commission, 200 F.3d 761, 766 (11th Cir. 2000) quoting Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366, 372, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979).  The "rights it designates" are those arising from the Constitution assuring "the equal protection of the laws, or of equal privileges and immunities under the laws."

dismiss makes no mention of it at all and cites only Alabama law for authority to dismiss the claims.

(Doc. 20, pp. 12-13).  Because the motion does not seek dismissal of plaintiff's conspiracy claims

under § 1985(3), the court will limit its discussion to Alabama law related to civil conspiracies.

The tort of civil conspiracy in Alabama has been defined by the following elements:

"the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means."

Lawler Mobile Homes, Inc. v. Tarver, 492 So. 2d 297, 306 (Ala. 1986) quoting Snyder v. Faget, 295

Ala. 197, 201, 326 So. 2d 113, 116 (1976), and quoting Barber v. Stephenson, 260 Ala. 151, 155,

69 So. 2d 251, 254 (1953).  By its nature, a conspiracy is rarely proved by direct evidence, but must

usually be shown by circumstantial evidence.  Eidson v. Olin Corp., 527 So. 2d 1283, 1285 (Ala.

1988).  Nonetheless, "[a] conspiracy cannot exist in the absence of an underlying tort."  Willis v.

Parker, 814 So.2d 857, 867 (Ala. 2001). "'[L]iability for civil conspiracy rests upon the existence

of an underlying wrong and if the underlying wrong provides no cause of action, then neither does

the conspiracy.'"  Id. (quoting Jones v. BP Oil Co., 632 So. 2d 435, 439 (Ala.1993)); see also Avis

Rent A Car Systems, Inc. v. Heilman, 876 So. 2d 1111, 1124 (Ala. 2003).

At this early stage of the case, the court cannot determine as a matter of law that no

conspiracy existed among the defendants[5] with respect to the torts sufficiently pleaded here by the

---

[5]  The defendants have not argued, and court is not called upon to decide, whether Alabama law recognizes the intra-corporate conspiracy doctrine as a limitation on conspiracy claims when the alleged conspirators are all employees of the same corporate entity.  See Scott v. City of Mountain Brook, 602 So. 2d 893, 895 (Ala. 1992) ("There is no conspiracy where the only parties to the alleged conspiracy are a corporation and one of its agents and the corporation's liability is predicated

plaintiff.  The claims of defamation, at least at this point, have survived the motion to dismiss, and it is factually possible, as alleged by the plaintiffs, that the defendants conspired to publish the defamatory comments to attorney Jones and the Athens Police Department.  While it may turn out that the evidence will not support the existence of an actual conspiracy, the court cannot make that determination at this stage of the case where the factual allegations of the plaintiff must be presumed true.  The motion to dismiss will be granted with respect to dismissal of a conspiracy to carry out an invasion of privacy or intentional infliction of emotional distress, because those substantive torts will be dismissed also.  The motion to dismiss the claim of a conspiracy to commit a defamation, however, will be denied.


Conclusion

Based on the foregoing discussion, the court will enter a separate order granting in part and denying in part the motion to dismiss, as follows:

1.  Plaintiff's claims for discriminatory denial of promotions in May and July 2008, alleged to be in violation of Title VII, 42 U.S.C. § 2000e, will be DISMISSED as time barred.

2.  The motion to dismiss will be DENIED with respect to plaintiff's claim under Title VII of discriminatory denial of a promotion in November or December 2008 against defendant Wesfam.

---

upon the theory of *respondeat superior* through the acts of the agent with whom it allegedly conspired. Williams v. Marcum, 519 So. 2d 473, 475 (Ala.1987) (Houston, J., concurring)); but see Lawler Mobile Homes, Inc. v. Tarver, 492 So. 2d 297 (Ala. 1986) (finding existence of conspiracy among a corporation and several employees).

3.   The motion to dismiss will be GRANTED with respect to all of plaintiff's Title VII claims against defendants Wyckoff, Dockery, and Oakley, in both their official and individual capacities, as they are not "employers" for Title VII purposes.

4.   The motion to dismiss plaintiff's claims under 42 U.S.C. § 1981 for discriminatory denial of a promotion in May and July 2008 will be GRANTED, and these promotion claims will be DISMISSED.

5.   The motion to dismiss plaintiff's claim under 42 U.S.C. § 1981 for discriminatory denial of a promotion "sometime in December 2008" will be DENIED.

6.   The motion to dismiss the plaintiff's claim for retaliation in violation of the Equal Pay Act will be DENIED.

7.   The motion to dismiss will be DENIED with respect to plaintiff's claims for defamation relating to comments made by defendants to Brian Jones and the Athens Police Department, but the motion will be GRANTED with respect to claims arising from comments made to the Alabama Department of Industrial Relations and to "unknown persons," and these latter defamation claims will be DISMISSED.

8.   The motion to dismiss will be GRANTED with respect to the plaintiff's invasion of privacy-"false light" claim, and it will be DISMISSED.

9.   The motion to dismiss will be GRANTED with respect to the plaintiff's tort of outrage/intentional infliction of emotional distress claim, and that claim will be DISMISSED.

10.  The motion to dismiss will be GRANTED only with respect to plaintiff's claims that the defendants conspired to invade his privacy by casting him in a false light and to cause him to suffer the infliction of emotional distress (tort of outrage), and claims for civil conspiracy on these theories

will be DISMISSED.  With respect to all other theories of civil conspiracy, the motion will be DENIED.

A separate order will be entered.

DONE this 20th day of May, 2011.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE