IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TYRONE C. GRANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-3457-TMP |
| ) | |
| WESFAM RESTAURANTS, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM OPINION**

The matter before the court concerns plaintiff Tyrone C. Grant's (hereafter "plaintiff") Motion for Partial Summary Judgment (Doc. 54), filed on November 15, 2011. The motion is supported by evidence such as depositions, documents, and affidavits. Defendants Wesfam Restaurants, Inc. (hereafter "Wesfam"), Richard Wyckoff, Thomas Dockery, and David Oakley (hereafter "defendants") responded in opposition to the motion (Doc. 63) on December 8, 2011. The plaintiff filed a reply (Doc. 83) on January 12, 2012. Having considered the briefs and evidence submitted by all parties, the court finds that the Motion for Partial Summary Judgment is due to be DENIED.

## I.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former FED. R. CIV. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.* at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former FED. R. CIV. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for

2

admission at trial; however, the nonmovant may not merely rest on its pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the nonmovant has properly responded to a motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do

more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The evidence supporting a claim must be "substantial." *Marcus v. St. Paul Fire and Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir. 1981). A mere scintilla of evidence is not enough to create a genuine issue of fact. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004); *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004). If the nonmovant's evidence is so thoroughly discredited by the rest of the record and is evidence that no *reasonable* jury could accept, that evidence fails to establish the existence of a genuine issue of fact requiring a jury determination. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted by the videotape."); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *see also Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so that there must be sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254;

*Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**II. Relevant Facts**

Applying these standards, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving defendants. This action was filed by an African-American plaintiff for employment discrimination and retaliation under Title VII, 42 U.S.C. § 2000e-5; the Civil Rights Act of 1991, 28 U.S.C. § 1981; and the Equal Pay Act, 29 U.S.C. § 206(d). There were additional state law actions pleaded for abuse of process, defamation, invasion of privacy, outrage, civil conspiracy, and negligence. The court dismissed certain claims in the Order (Doc. 43) and Memorandum Opinion (Doc. 42) filed on May 20, 2011, but claims remain pending under Title VII and Section 1981 for discriminatory denial of promotion as to defendant Wesfam only and the Equal Pay Act for retaliation against defendant Wesfam only. Additionally, plaintiff still has claims for abuse of process

5

against all defendants,[1] defamation against defendants Wesfam, Wyckoff, and Dockery; conspiracy-to-commit-defamation claim as to defendants Wesfam, Wyckoff, and Dockery; and a negligence claim against all defendants.

Plaintiff's evidence shows that, from January 2008 to December 19, 2008, he was employed as a general manager at one of defendant Wesfam's Burger King franchise restaurants in Athens, Alabama. His employment ended when defendants accused him of failing to properly document cash-register "voids," causing them to suspect that he was misappropriating money.[2] A review of daily packets for plaintiff's restaurant during November and early December 2008 revealed that there were "missing voids" for about $4,000. Defendants Wesfam, Wyckoff, and Dockery gave information concerning plaintiff's "missing voids" and management of the restaurant to the police in Athens, Alabama. This information indicated that plaintiff was the manager on duty at the time the "missing voids" occurred. Athens police

---

[1] The defendants' motion to dismiss did not challenge the abuse-of-process and negligence claims pleaded in the amended complaint; therefore, the court had no occasion to consider them at that time.

[2] "Missing voids" is the term used to describe when a "void" is reflected on a cash register, but for which the supporting documentation is missing. A "void" can occurred properly when a customer is refunded a purchase or a purchase is canceled before the customer makes payment. In such instances, Wesfam procedures required the manager to approve the void and that the void be documented. Documentation of the void required the manager to sign and retain the canceled sales receipt showing the actual transaction that was voided. The voided sales receipts then were used to reconcile the cashier's cash drawer against the sales reflected on the cash register at the end of the shift. The reconciliation reports, including the retained "voided" receipts, were stored as part of a "daily packet." Thus, a "missing void" is void reflected on the cash-register tape, but for which the signed sales receipt is missing.

investigators conducted an investigation and presented the evidence to a grand jury, which indicted the plaintiff for theft. The criminal case remains pending in the Limestone County Circuit Court.

During his employment, plaintiff complained to his supervisor, Oakley, and others that he suffered a racially hostile and discriminatory work environment. He complained to management about racially derogatory statements made by co-employees, denial of promotions, denial of transfers, and racially discriminatory pay, and he asserts that these complaints resulted in retaliatory termination of his employment with Wesfam.

A "void" occurs when a sales transaction reflected on a cash register is voided either to cancel the transaction with the customer or to refund money to the customer. A void indicates that no money was actually received from a customer as part of a transaction recorded on the cash register tape. The manager of the restaurant is responsible for making sure that voids are properly documented to ensure that they are real voids and not simply attempts to cover up theft by claiming the transactions were canceled or the money refunded to customers.

A "missing void" is a void for which there is no legitimate supporting documentation. The concern with missing voids arises from the inability of Wesfam to know whether a real void occurred (i.e., the transaction was canceled when the customer did not pay or the customer was refunded the money after a transaction) or

whether an employee has stolen the money and attempted to cover up the theft by claiming a transaction was a void. While Wesfam expects a certain number of undocumented voids, an excessive number of missing voids signals, at the least, cash management problems the restaurant, or worse, theft.

After termination of his employment with Wesfam, plaintiff sought unemployment benefits. On or about January 4, 2009, the Alabama Department of Industrial Relations (hereafter "ADIR") denied plaintiff unemployment benefits on the ground that he was ineligible because he had been terminated from his employment for "misconduct" due to improper cash handling procedures. Plaintiff appealed, and on or about April 21, 2009, received notice of a telephonic appeal hearing to be conducted on April 29, 2009. There is no evidence on file that defendant Wesfam received notice of this hearing and Olivia Chilton, a corporate representative of Wesfam, has testified that Wesfam did not receive such notice and therefore did not attend the telephonic hearing.

After the telephonic hearing, the ADIR hearing officer determined that plaintiff was not properly discharged for misconduct because he had no control over the missing voids. Plaintiff was determined to be eligible for unemployment compensation, which he began receiving. When defendant Wesfam, apparently after the fact, learned of the appeal hearing and decision, it sought to appeal the

determination to the full appeal board, but this application was denied. Wesfam did not seek a review in circuit court.

In the instant case, plaintiff filed his Motion for Partial Summary Judgment arguing that the finding of the appeal hearing officer that he was terminated from his employment with Wesfam due to missing voids that were beyond his control estops defendants from arguing that plaintiff was terminated for cause. For the foregoing reasons, the court is unpersuaded by plaintiff's argument and his motion is due to be denied.

## III. Analysis

Plaintiff contends that collateral estoppel, also known as issue preclusion, forecloses defendants from arguing that plaintiff was terminated for legitimate cause, because there has been an administrative finding that plaintiff was terminated for missing voids that were beyond his control. (Doc. 54). However, plaintiff is incorrect for several fundamental reasons and, given this, his Motion for Partial Summary Judgment is due to be denied.

Collateral estoppel is a principle for determining the conclusiveness of prior judgments and prevents relitigation of issues already decided in a prior judgment. *See Conley v. Beaver*, 437 So. 2d 1267, 1269 (Ala. 1983). Federal courts must apply the collateral estoppel rules of the forum state, including in Title VII cases. *Carlisle v.*

*Phenix City Board of Education*, 849 F.2d 1376, 1378 (11th Cir. 1988); *Mitchell v. Humana Hospital-Shoals*, 942 F.2d 1581, 1583 (11th Cir. 1991). This court must therefore apply the collateral estoppel law of Alabama.

The elements of collateral estoppel, as set forth by the Supreme Court of Alabama, are (1) the issue to be estopped must be identical to the one involved in the prior suit, (2) that issue must have been actually litigated in the prior suit, and (3) the resolution of that issue must have been necessary to the judgment in the prior suit. *Wheeler v. First Alabama Bank of Birmingham*, 364 So. 2d 1190, 1199 (Ala. 1982); *see also Conley*, 437 So. 2d at 1269. In order for collateral estoppel to give preclusive effect to an issue decided in an administrative proceeding, as is the case here, (1) there must be identity of the parties or their privies, (2) there must be identity of the issue to be estopped, (3) the parties must have been afforded an adequate opportunity to litigate the issue to be estopped in the administrative proceeding, (4) the issue to be estopped must have been actually litigated and determined in the administrative proceeding, and (5) the findings on the issue to be estopped must have been necessary to the administrative decision. *Ex parte Shelby Medical Center, Inc.*, 564 So. 2d 63, 68 (Ala. 1990); *see also Ex parte Smith*, 683 So. 2d 431, 433 (Ala. 1996). The court finds that plaintiff's motion is due to be denied primarily because there is no identity of the issue to be estopped.

Collateral estoppel in the present matter depends on whether the issue of racial discrimination was actually litigated and decided in the administrative proceedings; if not, identity of the issue is lacking and collateral estoppel cannot apply. *Carlisle*, 849 F.2d at 1379. The court notes that, while the *Carlisle* decision is Eleventh Circuit precedent, it was approved of and adopted by the Supreme Court of Alabama as a correct statement of Alabama collateral estoppel law in *Carlisle v. Phenix City Board of Education*, 543 So. 2d 194, 195 (Ala. 1989). Therefore, the principles of the federal *Carlisle* decision are applicable.

Consistent with this principle, other Alabama federal courts have found a lack of issue identity in similar matters. *See Dickinson v. Springhill Hospital, Inc.*, 397 F. Supp. 2d 1337, 1345-46 (S.D. Ala. 2005) (holding that, while an administrative hearing officer ruled upon plaintiff's eligibility for unemployment compensation, the issue before the court in a Title VII action is whether defendant acted with an intentional discriminatory purpose). The issue before the ADIR hearing officer was whether Grant was eligible for unemployment benefits, but the issue in the present case is whether defendants acted with intentional discriminatory animus under Title VII and Section 1981. *See id.* Because the issue at hand differs from the central issue in the administrative proceedings, collateral estoppel does not bar defendants from arguing that plaintiff was terminated for cause.

11

The crux of the issue at hand is intent. The issue in the administrative proceedings was whether plaintiff was eligible for unemployment benefits and *not* whether Wesfam terminated him because of discriminatory animus under Title VII and Section 1981. Plaintiff's discrimination claims require a finding of intent on the part of defendants, but the issue of intent was not present in the administrative proceedings, or, if it was, it is not apparent from the administrative record as noted below. The ADIR officer's finding that plaintiff was terminated for missing voids that were beyond his control does not implicate discriminatory animus on the part of defendants in any way nor does it foreclose the possibility that defendant Wesfam terminated plaintiff mistakenly but honestly. Thus, defendants are not foreclosed from arguing that plaintiff was terminated for cause. There is simply no identity of the issue to be estopped here necessary for collateral estoppel to apply.

The court also finds that the parties were not afforded an adequate opportunity to litigate the issue in the administrative proceedings. It appears from the record that defendant Wesfam was not given notice of the telephonic appeal hearing and thus did not attend. (Doc. 64-1, pp. 144-45, 147, 151). Plaintiff has presented no evidence that defendant Wesfam received notice of the hearing, only evidence that he himself received such notice. (Doc. 65-2, p. 43). Because defendant Wesfam did not receive notice of the hearing, defendant did not have an adequate opportunity to litigate the issue in the administrative proceeding. Had Wesfam been afforded such an adequate

opportunity, the finding of the ADIR officer may have differed. However, this is essentially a moot point given that the issue in the administrative hearing is not the issue in the present matter.

Furthermore, it is not entirely clear precisely what issues were actually decided in the administrative proceedings. If it is not clear from the administrative record what issues were actually litigated and decided, collateral estoppel cannot operate. *Mitchell*, 942 F.2d at 1584; *Fisher v. Space of Pensacola, Inc*., 461 So. 2d 790, 793 (Ala. 1984). No evidence has been presented that the administrative hearing officer ever considered whether race discrimination was a reason for the termination of plaintiff's employment. No transcript of the telephonic hearing has been submitted. Thus, even if discriminatory animus was at issue in the administrative proceedings, that is not at all clear from the record, rendering collateral estoppel inappropriate. The only issue that was clearly decided in the administrative proceedings was whether or not plaintiff was eligible for unemployment benefits and, as noted, that is not the central issue in this Title VII and Section 1981 cause of action.

**IV. Conclusion**

Primarily because the issue decided upon in the administrative proceedings differs from the issue to be estopped in the present matter, the court finds that collateral estoppel does not operate to prevent defendants from arguing that plaintiff

was terminated for cause. Therefore, plaintiff's Motion for Partial Summary Judgment (Doc. 54) is due to be and is hereby DENIED.

DONE and ORDERED this 31st day of January, 2013.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE