FILED
2013 Jan-31  PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

TYRONE C. GRANT,                    )
                                    )
          Plaintiff,                )
                                    )
v.                                  )        Case No. 5:10-cv-3457-TMP
                                    )
WESFAM RESTAURANTS, INC.,           )
*et al.*,                           )
                                    )
          Defendants.               )

## MEMORANDUM OPINION

The matter before the court concerns the Motion for Summary Judgment and accompanying brief and evidentiary material (Doc. 57, 58, & 59) filed by defendants' Wesfam Restaurants, Inc. (hereafter "Wesfam"), David Oakley, Richard Wyckoff, and Thomas Dockery (hereafter collectively referred to as "defendants") on November 18, 2011. The motion is supported by evidence such as depositions, documents, and affidavits. Plaintiff Tyrone C. Grant (hereafter "plaintiff") responded in opposition to the motion (Doc. 71) on December 19, 2011. Defendants filed a reply (Doc. 82) on January 9, 2012. Having considered the briefs and evidentiary materials submitted by all parties, the court finds that the Motion for Summary Judgment (Doc. 57) is due to be and is hereby GRANTED.

In his response to defendants' Motion for Summary Judgment (Doc. 71), plaintiff makes several arguments regarding issue preclusion briefed in his Motion for Partial Summary Judgment (Doc. 54). The court has addressed these arguments by separate Memorandum Opinion and finds it is not necessary to fully do so here. The court has denied plaintiff's Motion for Partial Summary Judgment and does not find his arguments regarding issue preclusion/collateral estoppel persuasive.

In addition, defendants have filed two Motions to Strike (Doc. 76 & 81).  The first motion pertains to evidence of a settlement offer made by defendants to plaintiff.  The second motion pertains to portions of plaintiff's evidentiary materials that allegedly contain inadmissible hearsay and statements made in affidavits on subjects about which the declarant has no personal knowledge. As the court does not find the evidence defendants seek to strike substantial enough to alter its analysis of plaintiff's claims or defendants' rebuttal arguments, the court will moot these motions to strike by separate order.

## I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former FED. R. CIV. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories,

and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former FED. R. CIV. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, the nonmovant may not merely rest on its pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the nonmovant has properly responded to a motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The evidence supporting a claim must be "substantial." *Marcus v. St. Paul Fire and Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir. 1981). A mere scintilla of evidence is not enough to create a genuine issue of fact. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004); *Kesinger ex*

*rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004).  If the nonmovant's evidence is so thoroughly discredited by the rest of the record and is evidence that no reasonable jury could accept, that evidence fails to establish the existence of a genuine issue of fact requiring a jury determination.  *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted by the videotape."); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249 (citations omitted); *see also Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so that there must be sufficient evidence on which the jury could reasonably find for the nonmovant.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255.  The nonmovant need not be given the benefit of every inference but only of every reasonable inference.  *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  Facts Relevant to Summary Judgment

This civil action was filed by an African-American plaintiff for employment discrimination and retaliation under Title VII, 42 U.S.C. § 2000e-5 (hereafter "Title VII"); the Civil Rights Act of

1991, 28 U.S.C. § 1981 (hereafter "§ 1981"); and the Equal Pay Act, 29 U.S.C. § 206(d) (hereafter "Equal Pay Act").   (Doc. 1 & 16).   There are additional state law actions for abuse of process, defamation, civil conspiracy, and negligence.   *Id.*   There is also a federal civil conspiracy claim pursuant to 42 U.S.C. § 1985(3).   *Id.*   Per this court's Order (Doc. 43) and Memorandum Opinion (Doc. 42) filed on May 20, 2011, which dismissed several claims pleaded by the plaintiff, the only claims remaining are the Title VII and § 1981 claims for employment discrimination; the Title VII and § 1981 claims for retaliation; the Equal Pay Act claim for retaliation; the abuse of process claim; the defamation claim; the state civil conspiracy to commit abuse of process and defamation claim; the federal civil conspiracy to commit abuse of process and defamation claim; and the negligence claim.   The court will deal with each of these claims in turn.

Applying the standards for viewing and assessing the evidence explained above, the following facts appear to be undisputed or, if disputed, are stated in the light most favorable to the non-moving plaintiff.

Westfam owns and operates a number of Burger King franchise restaurants in north Alabama. Defendant Wyckoff was the President and Chief Operating Officer of Westfam, while defendant Dockery was the Vice President of Operations.   Defendant Oakley was plaintiff's immediate supervisor, as the area manager.   Plaintiff was employed by Westfam on two occasions, once for a year and half as a general manager of a restaurant prior to 2002, and the second time from November 2007 to December 2008.   Plaintiff voluntarily left his employment on the first occasion, and then returned to employment with Wesfam in 2007.

In January 2008, plaintiff was promoted to the position of general manager at one of defendant Wesfam's Burger King franchise restaurants, Unit 4272, located at 1111 S.E. Jefferson Street, Athens, Alabama.   As the general manager, plaintiff had overall managerial responsibility for

all aspects of operating the business, including scheduling and cash-flow procedures. Plaintiff was assigned this particular restaurant in order for him to help alleviate excessive "voids" and other cash-flow problems at the location. Unit 4272 was experiencing a high number of "voids" even before plaintiff was assigned to the location. Plaintiff reported concerns about cash-handling problems by Allen Oakley, a "borrowed" manager from another restaurant location and defendant Oakley's nephew, and Fritz Peters, but Westfam did not respond to his reports. Plaintiff's employment ended in December 2008 when defendants suspected him of misappropriating money and he was terminated. Defendants gave information concerning plaintiff's management of the restaurant and cash-handling practices to the police in Athens, Alabama, and plaintiff was ultimately charged with theft. The criminal case remains pending in the Limestone County Circuit Court.

During his tenure as a general manager, in August, September, and October 2008, plaintiff complained to defendant Oakley that he worked substantially more hours than similarly situated Caucasian general managers at other Wesfam restaurants, but for less money. He has testified that he saw a document in David Oakley's office listing the salaries of Wesfam general managers, including some Caucasian general managers, and from this, plaintiff determined he was paid less money than the Caucasian managers. (Doc. 59-14, pp. 178-80). However, plaintiff does not recall seeing how much African-American general managers were paid. *Id.* at 187.

According to defendants, it is Wesfam's policy to reward general managers based on tenure and performance as opposed to education level; general managers with more seniority typically make more money under this policy. (Doc. 59-9, ¶ 11). Defendants have offered evidence that several African-American general managers made more money than certain Caucasian general managers, because their pay policy is racially neutral. (Doc. 59-9, ¶ 12). Defendants' undisputed evidence also showed that the Caucasian managers plaintiff saw listed on the aforementioned salary document had

all been working for Wesfam for fifteen or more years, considerably longer than plaintiff had been employed with Wesfam.  (Doc. 59-9, ¶ 11).  In August and September 2008, plaintiff had been employed as a general manager for less than a year during his second period of employment.

Plaintiff argues that defendants wrongfully failed to transfer him to another store.  Between June and August of 2008, plaintiff told his supervisor, defendant David Oakley, that he was interested in being transferred from Unit 4272 in Athens to a store in Hunstville to act as general manager there.  It is Wesfam's policy that general managers fulfill a one-year term of employment as a general manager at a specific restaurant before being eligible for transfer.  (Doc. 59-9, ¶ 11).  Defendants also contend that there were no vacant general manager positions available in Huntsville during this time period, and thus assert that, even if plaintiff had been eligible for transfer between June and August of 2008, he could not have been transferred to a store in Huntsville.  (Doc. 59-9, ¶ 10).  Plaintiff, however, testified by affidavit that at least one position at a Huntsville restaurant was opened by the retirement of Sandy Bailey, which the court will assume to be true for purposes of the defendants' motion for summary judgment.

Plaintiff argues that he was wrongfully criticized by his supervisor, defendant David Oakley.  On June 1, 2008, plaintiff received a letter from defendant Oakley informing him that his restaurant had not met its goal for speed of service for a period of four months.  (Doc. 59-14, Exh. 18).  Defendants assert that this letter was not a formal written critique of plaintiff's job performance; that it was never sent to Wesfam's home office, as such a formal critique would ordinarily have been; and that it was merely a "coaching letter" intended to help plaintiff improve his restaurant's service.  (Doc. 59-16, pp. 102-04).  It appears to be undisputed that plaintiff suffered no loss of pay or other employment benefits as a result of the letter.

Plaintiff argues that he was wrongfully denied a promotion to three area "Supervisor" positions.  The first position was for supervisor of a Wesfam restaurant in Gadsden, Alabama, and the opening was posted from April to May 2008; plaintiff applied for this position but did not receive the promotion.  (Doc. 59-9, ¶ 7).  The second supervisor position was posted in July 2008 and was awarded to Kevin Davis, an African-American applicant with approximately ten years of experience as a supervisor, in August 2008.  It appears that plaintiff did not apply for this position.  (Doc. 59-9, ¶ 8).  The third position was ultimately awarded to Rose Hancock, a Caucasian female Wesfam manager.  Hancock was awarded the supervisor position on October 22, 2008, and the promotion was announced in the Wesfam company newsletter in November, 2008.  It appears plaintiff did not apply for this position, as well.  (Doc 59-9, ¶ 9 ; Doc. 59-14, Exh. 25).

Plaintiff further alleges a claim for hostile work environment pertaining to several incidents of racially discriminatory utterances.  On March 28, 2008, Patrisha Herbison, a Wesfam employee under plaintiff's supervision, referred to another employee (not plaintiff) as a "nigger."  Herbison was immediately sent home and was not permitted to return to work at any Wesfam restaurant thereafter.  (Doc. 59-9, ¶ 13).  Following an internal investigation by defendants, Herbison was terminated from her employment with Wesfam.  *Id.*; (Doc. 59-7).  The next day, on March 29, 2008, Herbison's mother (not a Wesfam employee), evidently angry over the situation, came to plaintiff's store and referred to him as a "nigger."  (Doc. 59-14, p. 212).  No further incidents regarding Herbison's mother occurred.  (Doc. 59-9, ¶ 13).

Four months later in July 2008, Bradley Pierce, an assistant manager working under plaintiff, allegedly came to work intoxicated and, after a verbal altercation with plaintiff, referred to him as a "nigger."  Although plaintiff reported the altercation to Wesfam supervisors, he did not include in his report Pierce's use of the racial slur or that Pierce was intoxicated.  (Doc. 59-14, pp. 197, 202,

206-08).  Nevertheless, Pierce was transferred to another restaurant and plaintiff never had to work with or otherwise deal with him thereafter.  *Id.* at 208-09.

Four months after the Pierce incident, on November 17, 2008, Jammie Simmons, a white Wesfam employee under plaintiff's supervision, allegedly texted the phrase "little nigger" to an African-American Wesfam employee also under plaintiff's supervision. (Doc. 59-9, ¶ 14). Plaintiff never saw the alleged text message nor could he identify any other employee who did.  (Doc. 59-14, pp. 219-20).  Simmons denied having texted the slur.  The Wesfam human resources department investigated the incident, but could not substantiate it.  Nevertheless, Simmons was transferred to another restaurant, and plaintiff never had to work with or otherwise deal with her thereafter. (Doc. 59-9, ¶ 14).

Plaintiff contends that he was wrongfully suspended and terminated from his employment with Wesfam in December 2008.  Defendants assert that an excessive number of "missing voids" occurring during plaintiff's management was the reason for plaintiff's termination and not racially discriminatory animus.  These missing voids are also the purported reason defendants took restaurant cash-handling information to law enforcement with a concern that theft had occurred.

A "void" occurs when a sales transaction reflected on a cash register is voided either to cancel the transaction with the customer or to refund money to the customer.  (Doc. 59-10, ¶ 5).  A void indicates that no money was actually received from a customer as part of a transaction recorded on the cash register tape.  Under Wesfam policy, the general manager of the restaurant is responsible for making sure that voids are properly documented to ensure that they are real voids and not simply attempts to cover up theft by claiming the transactions were canceled or that the money was refunded to customers.  (Doc. 59-10, ¶¶ 7-11).  It is the nondelegable duty of the general manager of a given

restaurant to count and verify all daily voids for all shifts.  (Doc. 59-1, § 400.200).  Plaintiff had been fully trained in this and all Wesfam's cash-handling policies and procedures.  (Doc. 59-11, ¶¶ 4-8).

A "missing" void is a void for which there is no legitimate supporting documentation. (Doc. 59-10, ¶¶ 6, 15-17).  The concern with missing voids arises from the inability of Wesfam to determine whether a real void occurred (i.e., the transaction was canceled when the customer did not pay or the customer was refunded the money after a transaction) or whether an employee has stolen the money and attempted to cover up the theft by claiming a transaction was a void.  *Id.*  While Wesfam expects a certain number of undocumented voids in the ordinary course of business, an excessive number of missing voids signals, at the least, cash management problems with the restaurant or, worse, theft.  *Id.*

In November of 2008, Wesfam's president, defendant Richard Wyckoff, reviewed the product mix database for a particular line of products and discovered that plaintiff's restaurant had three to four consecutive days in a week of negative sales for some of Wesfam's "angus" products. (Doc. 59-10, ¶ 12).  The product mix database displays the total number of menu items sold at a given Wesfam restaurant on a particular day as well as by Wesfam as a whole.  (Doc. 59-13, ¶ 5). Around that same time, defendants assert that plaintiff's restaurant received two complaints from customers about plaintiff's quality of service, and plaintiff was suspended on December 16, 2008, while Wesfam conducted an investigation about the possible violation of its cash-handling policies. (Doc. 59-10, ¶ 14).  Plaintiff was told that the customer complaints were the reason for his suspension and, while no documentation of these complaints exists, defendants have offered testimony that they occurred.  (Doc. 59-15, pp. 169-75).  Defendants acknowledge, however, that the real reason for plaintiff's suspension was to investigate the concerns about missing voids at his store.

According to Defendant Wyckoff, he was concerned that negative sales indicated more voids than sales for the angus products. (Doc. 59-13, ¶ 7). At the end of the investigation, defendants Wyckoff and Dockery identified twelve days between November and December of 2008 during which more than $4,000 worth of unsupported voids occurred during plaintiff's shifts. (Doc. 59-18, pp. 99-101). When questioned by defendants on December 19, 2008, plaintiff could not offer an explanation for the missing voids but suspected Allen Oakley, defendant David Oakley's nephew and one of Wesfam's assistant managers, could be responsible. (Doc. 59-18, p. 69). Defendant Dockery purportedly investigated this possibility but eliminated Allen Oakley as a suspect and found that all of Allen Oakley's voids were accounted for and were not "missing" proper documentation. (Doc. 59-10, ¶ 13). Plaintiff was terminated thereafter on December 19, 2008. (Doc. 59-18, p. 79).

Shortly after plaintiff's termination, Wesfam's Vice President of Human Resources, John Wessel (not a named defendant in this action), spoke with attorney Brian Jones seeking legal advice pertaining to plaintiff's situation. (Doc. 59-12, ¶¶ 5-6). None of the named defendants were involved in this meeting, except Wesfam itself, acting through its agent, Wessel. Although Jones was ultimately not retained as counsel for Wesfam, Wessel asserts that he spoke with Jones with the intent that the consultation be privileged and confidential. *Id.*

Thereafter, defendants Wyckoff and Dockery attended a meeting with Lieutenant Floyd Johnson of the Athens Police Department regarding the potential theft and gave him the relevant documents assembled from defendants' internal investigation into the missing voids that occurred in November and December of 2008 during plaintiff's shifts. (Doc. 59-18, pp. 84-95). It is Wesfam's general policy to report any instance of suspected theft to the police, and, to this end, Wesfam has reported at least nine other employees besides plaintiff, including Melissa Cooley, to the police subsequent to their termination. (Doc. 59-16, pp. 51, 64-67, 80). Lieutenant Johnson

conducted his own investigation, and while defendant Dockery provided him with further documents at his request, defendants testified that they made no further statements to Johnson regarding plaintiff (Doc. 59-10, ¶¶ 15-17).

After Lieutenant Johnson's independent investigation, the evidence of potential theft pertaining to plaintiff was submitted to a grand jury, but defendants were not involved in submitting information to the grand jury nor did they provide any testimony to the grand jury.  (Doc. 59-12, ¶ 7).  The Grand Jury indicted plaintiff for theft and the criminal case remains pending.

Plaintiff filed the instant civil action on December 14, 2010.  The court will now address plaintiff's remaining claims.

### III. Plaintiff's Discrimination and Retaliation Claims Under Title VII, § 1981, and the Equal Pay Act

Plaintiff alleges that defendants discriminated and retaliated against him in violation of Title VII, § 1981, and the Equal Pay Act.  The court will deal with each claim in turn.  For the forthcoming reasons, defendants' Motion for Summary Judgment is due to be granted on all of plaintiff's remaining discrimination and retaliation claims.

### A. Discrimination Claims

Plaintiff alleges that defendants discriminated against him in violation of Title VII and § 1981 by (1) failing to promote him to supervisor, (2) failing to transfer him to a store in Hunstville, Alabama, (3) subjecting him to a racially hostile work environment, (4) paying him less than similarly situated Caucasian general managers, (5) wrongfully suspending his employment with Wesfam, and (6) wrongfully terminating his employment with Wesfam.  For the reasons set forth

below, the court finds that defendant Wesfam[1] is entitled to summary judgment on plaintiff's discrimination claims under Title VII, and all named defendants are entitled to summary judgment on plaintiff's discrimination claims under § 1981.

Plaintiff may establish a *prima facie* case of discrimination under Title VII by direct or circumstantial evidence. *Crawford v. Western Electric Co.*, 745 F.2d 1373, 1376 (11th Cir. 1984); *Oliver v. National Beef Packing Co., LLC*, 294 Fed. Appx. 455, 457 (11th Cir. 2008). Title VII and § 1981 have the same standards of proof and utilize the same analytical framework. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The court agrees with defendants that there is no direct evidence of discrimination in the present matter. Plaintiff's discrimination claims rely on circumstantial evidence.

To present circumstantial evidence of discrimination, plaintiff must meet the *McDonnell Douglas* standard by showing that (1) he belongs to a racial minority or another protected class, (2) he was qualified to perform his job or, with regard to promotions, applied for and was qualified for a promotion, (3) he was subjected to an adverse employment action by defendants or was rejected for promotion despite being qualified, and (4) defendants treated similarly situated employees outside his racial or protected class more favorably or promoted equally or less-qualified employees outside of his protected class. *Brown v. Alabama Dept. Of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010); *Rainey v. Holder*, 412 Fed. Appx. 235, 238 (11th Cir. 2011)*; McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

---

[1] While plaintiff alleges that all named defendants discriminated against him under Title VII and § 1981, only defendant Wesfam is a proper defendant to claims arising under Title VII. The court fully addressed this in its Order (Doc. 43) and Memorandum Opinion (Doc. 42) dated May 20, 2011. Defendants Wyckoff, Dockery, and Oakley are not proper defendants to Title VII or Equal Pay Act claims. *James v. Montgomery Regional Airport Authority*, 181 Fed. Appx. 930, 931 (11 Cir. 2006). Therefore, Wesfam is the only defendant against whom plaintiff's Title VII discrimination and retaliation claims remain pending.

To qualify as an adverse employment action under the second prong of the *McDonnell Douglas* framework, the employment action in question must have created a "serious and material change in the terms, conditions, or privileges of employment." *Rainey*, 412 Fed. Appx. at 238. Teasing, offhand comments, and isolated incidents that are not extremely serious do not rise to the level of discriminatory changes to terms, conditions, or privileges of employment for purposes of a hostile work environment theory. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999); *Alexander v. Opelika Schools*, 352 Fed. Appx. 390, 392 (11th Cir. 2009). The employment action must be adverse as viewed by a reasonable person under the circumstances. *Davis v. Town of Lake Park, Fla.*, 245 F.3d, 1232, 1238-39 (11th Cir. 2001).

Once plaintiff has made a *prima facie* showing of discrimination, the burden shifts to defendant employer, Wesfam, to articulate a legitimate, nondiscriminatory reason for defendants' actions. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Brown*, 597 F.3d at 1174. Under Title VII and § 1981, the burden on defendants to proffer a legitimate, non-discriminatory reason is "exceedingly light." *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989). If defendants articulate one or more legitimate reasons, the presumption of discrimination is rebutted and the burden shifts to plaintiff to offer substantial evidence that defendants' articulated reason is merely a pretext for discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086-87 (11th Cir. 2004); *Brown*, 597 F.3d at 1174. Defendants' burden to offer a legitimate reason is merely one of production; plaintiff bears the burden of persuasion. *Meeks*, 15 F.3d at 1021.

As applied to the various theories of discrimination alleged by plaintiff, the court finds that plaintiff has failed to meet his *prima facie* burden under the *McDonnell Douglas* standard. Alternatively, even assuming arguendo that plaintiff has met his burden for a *prima facie* showing

of discrimination, defendants have rebutted plaintiff's evidence by showing legitimate, nondiscriminatory reasons for their employment actions and plaintiff has failed to show that the proffered reasons are merely pretext. Given this, the record contains no substantial evidence of any employment action taken by defendants that rose to the level of discriminatory changes to the terms, conditions, or privileges of plaintiff's employment.

The court will now address each of plaintiff's remaining discrimination claims.

### 1. Failure to Promote Claims

Plaintiff alleges that defendants violated Title VII and § 1981 by discriminatorily failing to promote him to a supervisor position in November or December of 2008. As set forth in this court's Memorandum Opinion (Doc. 42) dated May 20, 2011, the only remaining failure to promote claim under § 1981 involves the promotion of Rose Hancock.[2] Failure to promote claims under § 1981 are subject to a two-year statute of limitations. *Price v. M & H Valve Co.*, 177 Fed. Appx. 1, 6-7 (11th Cir. 2006). Plaintiff filed this action on December 14, 2010. Therefore, to be timely under § 1981, the Rose Hancock promotion must have occurred on or after December 14, 2008. *Price*, 177 Fed. Appx. at 6-7. While plaintiff alleges that this promotion occurred in November or December of 2008, defendant has presented undisputed evidence showing that the promotion occurred on October 22, 2008, and was announced in the November 2008 issue of the Wesfam company newsletter. (Doc. 59-9, ¶ 9; Doc. 59-14, Exh. 25). Both the promotion and announcement occurred prior to December 14, 2008, outside the two-year limitation period for asserting a § 1981 claim.

---

[2] Plaintiff also alleges discriminatory failure to promote claims under § 1981 involving two earlier promotions in May and July of 2008, but the court found these were time-barred in its earlier Order (Doc. 43) and Memorandum Opinion (Doc. 42) and those claims were dismissed. All of the promotion claims are time barred under Title VII, as plaintiff did not file an EEOC charge of discrimination until July 2009, more than 180 days after he was denied promotion.

Therefore, the remaining § 1981 failure to promote claim is time-barred and there is no genuine issue of material fact with respect to this claim.

Even if the remaining § 1981 failure to promote claim were not time-barred, it would still fail. Under Wesfam's racially neutral policy, general managers must work in that position at a given restaurant for a period of one year before they are eligible for promotion. (Doc. 59-9, ¶¶ 10-11). Plaintiff had not yet worked at his restaurant, Unit 4272, as a general manager for one year during any of the promotions at issue. Although it may be argued that, added to his prior period of employment, plaintiff had worked for more than a year total as a general manager, he did not do so at one particular restaurant. His previous employment was at a different restaurant. Therefore, he was not eligible for promotion in October, November, or December of 2008 as he was promoted to general manager at Unit 4272 on January 20, 2008. (Doc. 59-14, p. 83). The second prong of the *McDonnell Douglas* framework for a *prima facie* showing is thus lacking, as plaintiff was not qualified for promotion. Because prong (2) of the test is lacking, prongs (3) and (4) are necessarily lacking. Plaintiff's lack of eligibility is also a legitimate, non-discriminatory reason for defendant's failure to promote him, which plaintiff has not been able to show is a mere pretext.

In addition, the record shows that plaintiff did not apply for the supervisor position awarded to Rose Hancock on October 22, 2008. Prong (2) of the *McDonnell Douglas* framework requires that plaintiff actually have applied for the position. (Doc. 59-9, ¶ 9). Obviously, it cannot be said that defendants discriminatorily failed to promote plaintiff to a supervisor position which he did not apply for, even if he had been eligible for such promotion. For these reasons, defendant Wesfam is entitled to summary judgment on plaintiff's discriminatory failure to promote claim under Title VII and § 1981 as to the Rose Hancock promotion.

16

Defendants are also entitled to summary judgment on plaintiff's discriminatory failure to promote claims under Title VII pertaining to the two earlier promotions.  Plaintiff alleges that defendants discriminated against him by failing to promote him to supervisor in May and July of 2008.  However, as noted, plaintiff was not eligible under Wesfam's racially neutral policy for promotion at any point in 2008, for he had not completed his required one-year term at Unit 4272.  Furthermore, the record shows that plaintiff did not apply for the July 2008 supervisor position.  (Doc. 59-9, ¶ 8.)  As defendants have offered legitimate, non-discriminatory reasons for failing to promote plaintiff in May and July 2008, reasons which plaintiff has not shown to be pretextual, they are entitled summary judgment as to these claims.

Plaintiff also has not shown, with respect to any failure to promote claim, that defendants applied the one-year policy to any Wesfam general manager outside of plaintiff's protected class differently than it was applied to him.  In other words, he has not shown that defendants promoted any general manager outside his racial or protected class without requiring them to fulfill their one-year term.  Absent such evidence, it cannot be said that the one-year employment rule is not a reasonable racially neutral promotion requirement.

Finally, the record reveals that the July 2008 supervisor position was awarded to an African-American applicant.  The fourth prong of the *McDonnell Douglas* framework for a *prima facie* showing of discrimination is that the promotion at issue was given to someone outside the plaintiff's racial or protected class.  Plainly, plaintiff is not able to meet this part of the test with respect to this particular promotion.  (Doc. 59-9, ¶ 8.)  Even if plaintiff could meet the test, there is no substantial evidence of racial discrimination showing that defendants' proffered reasons for failing to promote plaintiff were merely pretext, and summary judgment is appropriate as to the remaining failure to promote claims.

### 2.  Failure to Transfer Claim

Plaintiff alleges that defendants violated Title VII and § 1981 by discriminatorily failing to transfer him to a restaurant in Huntsville, Alabama, in response to several requests by him during 2008.  To establish a prima facie case of discriminatory failure to transfer, plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position in question, (3) he suffered an adverse employment action, and (4) someone outside of his protected class was hired or transferred into the position.  *Hinson v. Clinsh County, Georgia Board of Education*, 231 F.3d 821, 828 (11th Cir. 2000).

For the same reasons as explained above with respect to plaintiff's promotion claims, these discriminatory failure to transfer claims are also time barred.  Plaintiff did not file his EEOC charge until about a year after these denials of transfer occurred and he did not file suit until December 2010, more than two years after they occurred.  Therefore, both under Title VII and § 1981, they are time barred.

Further, plaintiff has not met his *prima facie* burden.  Defendants have presented evidence showing that plaintiff was not qualified for transfer at the time in question because he had not served out his one-year obligation at Unit 4272, and thus prongs (2), (3), and (4) of the *McDonnell Douglas* framework as applied in the *Hinson* case are lacking.  Even if a *prima facie* showing has been made, plaintiff cannot show that the racially neutral policy of requiring general managers to work one full year at a given location before being transferred is a pretext for discrimination.  Under Wesfam's neutral policy, general managers must work in that capacity at a given restaurant for a term of one year before they are eligible for transfer.  Plaintiff was not eligible, and thus not qualified, for transfer between June and August of 2008 (or at any point in 2008) when he made such requests. (Doc. 59-9, ¶¶ 10-11).  Plaintiff also has not shown that someone outside of his protected class was

allowed to transfer without meeting the one-year service rule.  Prong (4) of the *McDonnell Douglas/Hinson* framework is therefore absent as well.  Finally, the reasons offered by defendants for failing to transfer plaintiff are legitimate and non-discriminatory, and plaintiff has not shown them to be pretextual.  Defendants are entitled to summary judgment on plaintiff's discriminatory failure to transfer claim.

### 3.  Disparate Payment Claim

Plaintiff alleges that defendants paid him less than comparable Caucasian general managers in violation of Title VII and § 1981.  To establish a prima facie case of disparate payment, plaintiff must show he occupied a similar position to that of a higher paid employee who is not a member of his protected class.  *Drake-Sims v. Burlington Coat Factory Warehouse of Alabama*, 330 Fed. Appx. 795, 803 (11th Cir. 2009); *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008); *Meeks*, 15 F.3d at 1019.  The employee whom plaintiff identifies as a comparator must be similarly situated in all relevant respects and be nearly identical to the plaintiff.  *Drake-Sims*, 330 Fed. Appx. at 803. Plaintiff has failed to meet this burden.[3]

While plaintiff testified he saw a document listing the salaries of several general managers, including Caucasian managers he claims were paid more than he was, he admits he does not recall seeing how much African-American general managers on the list were paid.  (Doc. 59-14, pp. 178-80, 187).  The record shows that Wesfam's policy is to reward general managers based on tenure and performance, meaning general managers with the most tenure generally make the most money. (Doc. 59-9, ¶¶ 11-12).  The record further shows that several African-American general managers

---

[3] Again, because plaintiff did not file an EEOC charge of discrimination until July 15, 2009, any claims under Title VII are time barred.  More than 180 days elapsed from the time of his termination until the charge was filed.  His § 1981 claim was timely filed within two years of his termination, however.

were paid more than some Caucasian general managers, and that the Caucasian general managers plaintiff claims as comparators had all been employed by Wesfam for fifteen or more years, considerably longer than plaintiff. *Id.* Length of service, and the greater experience that goes along with it, are legitimate bases for setting pay. *Bates v. Hunt*, 3 F.3d 374 (11th Cir. 1993); *Blount v. Alabama Co-operative Extension Service*, 869 F. Supp. 1543, 1552 (M.D. Ala. 1994). A substantial difference in time that employees have been employed is a legitimate basis for differing levels of pay, as shown in this case. The fact that a general manager with fifteen years of experience is paid more than another with only one year's service does not raise an inference of discrimination because the respective managers are not sufficiently similarly situated to draw such conclusions.

The court is persuaded that the undisputed evidence shows that Wesfam employs a racially neutral policy setting payment guidelines for its general managers, and the evidence on file shows that defendants followed this neutral policy when setting not only plaintiff's salary but those of other general managers. The policy was not animated by racial discrimination, nor did it have a racially disparate impact,[4] as demonstrated by the evidence that several African-American general managers, including plaintiff, made more money than certain other Caucasian managers. *Id.* There is no substantial evidence of disparate pay discrimination. Therefore, summary judgment is due to be granted for defendants on plaintiff's Title VII and § 1981 disparate payment claim.

### 4.  Hostile Work Environment Claims

Plaintiff alleges that defendants violated Title VII and § 1981 by subjecting him to a racially hostile work environment. To establish a prima facie case of hostile work environment, plaintiff must show that (1) he belongs to a protected class, (2) he has been subjected to unwelcome

---

[4] Plaintiff has not made a disparate impact argument. Nevertheless, the evidence showing that some African-American general managers made more than some white general managers demonstrates the absence of a disparate impact.

harassment, (3) the harassment was based on a protected characteristic such as race, (4) the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) defendants were responsible for this environment under a theory of direct or vicarious liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza*, 195 F.3d at 1245; *Freeman v. City of Riverdale*, 330 Fed. Appx. 863, 865 (11th Cir. 2009).

There are objective and subjective components to this standard.  The behavior in question must result in an environment that a reasonable person would find hostile or abusive under the circumstances and plaintiff himself must subjectively perceive it as such.  *Freeman*, 330 Fed. Appx. at 865.  In evaluating the objective severity of the harassment, the court must look at the totality of the circumstances and consider (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct was physically threatening or humiliating or a mere offensive utterance, and (4) whether the conduct unreasonably interfered with the employee's job performance.  *Id.*  Plaintiff must show that defendants knew or should have known about the harassment in question and that they failed to take prompt remedial action.  *Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956, 959 (11th Cir. 1997); *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 490 (11th Cir. 1996).  Because plaintiff has failed to meet this *prima facie* standard, summary judgment is due to be granted in favor of defendants as to the hostile work environment claims.

Plaintiff alleges that the combined effect of multiple incidents of racial utterances by Wesfam employees, defendants' paying him less than Caucasian general managers, defendants' failure to transfer him, and defendant Oakley's criticism of his job performance all combined to create a hostile work environment.  Regarding the racial utterances, the claim centers around the remarks of

Patrisha Herbison and her mother, Bradley Pierce, and Jammie Simmons as set forth above.[5]  The court has already dealt with plaintiff's failure to transfer and disparate pay claims; because these two claims fail, they cannot form the basis for a hostile work environment claim.  As considered above, the defendants' failure to transfer plaintiff to a Huntsville store was consistent with a racially neutral policy of requiring the completion of a full year's service at one location before being eligible for transfer.  Likewise, the undisputed evidence shows only that general managers with more length of service, regardless of race, were paid more than general managers with less time of service.  Neither of these constituted harassment, as both were the product of a race-neutral employment policy.  An employee subjected to the same work rule as every other employee cannot argue that the rule is discriminatory harassment, because he has not been singled out for treatment different from every other employee.

The alleged criticism of plaintiff's job performance and racial utterances add nothing to the hostile work environment claim.  Plaintiff alleges that defendants, specifically defendant David Oakley, created a hostile work environment by unfairly criticizing his job performance in June 2008.  However, not all conduct that negatively affects an employee constitutes an adverse employment action.  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001).  Plaintiff must show that defendant Oakley's criticism resulted in a serious and material change in the compensation, terms, conditions, or privileges of his employment as viewed by a reasonable person under the circumstances.  *Id.* at 1239.  Criticism of job performance that does not lead to tangible employment consequences will rarely form the basis of a Title VII claim.  *Id.* at 1241; *Merriweather v. Alabama Dept. Of Public Safety*, 17 F. Supp. 2d 1260, 1274-75 (M.D. Ala. 1998).

---

[5]  A Title VII claim for hostile work environment was fully accrued at the time of plaintiff's termination on December 19, 2008, yet he did not file an EEOC charge until July 15, 2009, more than 180 days later.

Plaintiff has not shown in this case that the alleged criticism he received objectively resulted in a serious and material change in the terms, conditions, or privileges of his employment. The record shows that plaintiff received a single letter from defendant Oakley on June 1, 2008. (Doc. 59-14, Exh. 18). The letter advised plaintiff that his restaurant had not met its goal for speed of service for four months. Additionally, the record shows that this was not a formal written warning nor was it sent to Wesfam's home office as such a warning would have been. (Doc. 59-66, pp. 102-04). The letter appears to have merely been a "coaching statement," as defendants assert. Plaintiff does not allege or present any evidence that his compensation or terms and privileges of employment were affected as a result of the coaching statement, and the only manner in which he appears to allege that the conditions of his employment were altered as a result of the statement was in the creation of a hostile work environment, an argument the court does not find persuasive. Employers have the right to require employees to meet legitimate employment expectations. Criticism (or coaching) for failure to do so, without more, cannot be viewed as creating a hostile work environment. A single instance of a written criticism directly addressed to a legitimate business concern of a fast-food restaurant — speed of service — can hardly be regarded as illegitimate or racially motivated harassment when it results in no tangible impact on the plaintiff's pay, hours, or terms of employment.

While plaintiff may have subjectively perceived the coaching statement as racially motivated, there is nothing in the record to show that, objectively, it could be viewed as such by a reasonable person. There is simply no evidence of racially discriminatory animus as motivation for the coaching statement. Plaintiff also has not alleged that any further reprimand or criticism was directed against

him by defendant Oakley[6] or the other defendants until his eventual suspension and termination of his employment six months later for a completely different issue.  The evidence is undisputed that this was merely an isolated incident that was not racially motivated.  It did not result in a serious and material change in the compensation, terms, conditions, or privileges of plaintiff's employment as viewed by a reasonable person under the circumstances.  This alleged criticism cannot form the basis of a hostile work environment claim.

Plaintiff also alleges that the racial utterances made by Patrisha Herbison, Herbison's mother, Bradley Pierce, and Jammie Simmons constituted a hostile work environment for which defendants were responsible in violation of Title VII and § 1981.  In order to hold defendants responsible for these utterances, plaintiff must show that they knew or should have known about the utterances in question and that they failed to take prompt remedial action.  *Little*, 103 F.3d at 959.  Plaintiff has not met this standard.

The record shows that defendants took prompt remedial action after the Herbison and Simmons incidents by terminating Herbison and transferring Simmons.  Thus plaintiff does not have a reasonable belief that defendants engaged in unlawful discrimination.  (Doc. 59-9, ¶¶ 13-14; Doc. 59-7).  Herbison was ordered to leave the restaurant on the same day that her incident took place and Wesfam subsequently terminated her because of her utterance.  *Id.*  After investigating the incident with Simmons, defendant transferred her to another restaurant even though they had been unable to substantiate the allegations.  *Id.*  Plaintiff never had to work with Simmons again.  Neither the Herbison nor Simmons slurs were directed at plaintiff nor were they personally witnessed by him.

---

[6]  To the extent that plaintiff implies that Oakley made the criticism because plaintiff had reported cash-handling problems by Oakley's nephew, Allen Oakley, this fails to show that the animus was *racial*.  Even assuming that Oakley was upset by plaintiff's complaints about his nephew, this was a personal motivation, not a racial one.

*Id.*; (Doc. 59-14, pp. 219-20).  These incidents appear to have been mere offensive utterances for which defendants took prompt remedial action.

The Bradley Pierce incident is distinct, for the alleged utterance was directed at plaintiff. (Doc. 59-14, pp. 197, 202, 206-09).  However, the record indicates that plaintiff did not include Pierce's use of a racial slur (or that he was allegedly intoxicated during the altercation) in his written report of the incident.  *Id.*  Even though defendants were unaware of the racial insult, Wesfam transferred Pierce to another restaurant and plaintiff never had to work or deal with him again.  *Id.* Given that plaintiff did not include the racial slur in his written statement given to Wesfam, transferring Pierce to another restaurant subsequent to an altercation with plaintiff can be considered prompt remedial action on defendants' part.

As Herbison's mother was never an employee of Wesfam, defendants cannot be held liable either directly or vicariously for her single racial remark.  Herbison's mother made a single racial utterance and plaintiff does not allege that he encountered her thereafter.  (Doc. 59-14, p. 212). Regardless whether he encountered her thereafter, her conduct is not attributable to Wesfam, nor is there any indication that Wesfam failed to take steps to prevent her from continuing to harass plaintiff.  The evidence reveals only a single confrontation between plaintiff and Herbison's mother.

Ultimately, both the alleged criticism of plaintiff's job performance and the racial utterances were too isolated and too few to constitute a hostile work environment.  These incidents were not severe or pervasive enough to alter the terms or conditions of plaintiff's employment and create a discriminatorily hostile environment.  For these reasons, defendants are entitled to summary judgment on plaintiff's hostile work environment claims.

### 5. Wrongful Suspension Claim

Plaintiff alleges that defendants wrongfully suspended his employment in violation of Title VII and § 1981 on December 16, 2008.  Plaintiff further argues that defendants lied to him regarding the reason for his suspension.  Plaintiff was suspended on December 16, 2008, after defendant Wyckoff reviewed the product mix database, discovered the negative sales for the angus products, and an investigation revealed the missing voids.  Also, defendants assert that Wesfam received two complaints from customers concerning plaintiff's quality of service.  (Doc. 59-10, ¶ 14).  Defendant Oakley told plaintiff he was being suspended while Wesfam investigated the customer complaints.  *Id.*

To succeed on a wrongful suspension claim, plaintiff must show that a discriminatory reason motivated defendants to suspend plaintiff or that defendants' proffered explanation for the suspension was unworthy of credence and merely pretextual.  *Bennett v. Chatham County Sheriff Dept.*, 315 Fed. Appx. 152, 160 (11th Cir. 2008); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000).  Plaintiff has not met this burden.  While plaintiff argues that defendants lied regarding the reason for his suspension, defendants have presented deposition testimony showing that Wesfam received two customer complaints regarding plaintiff's quality of service and that this was a reason for his suspension.  (Doc. 59-10, ¶ 14).  While defendants admit that plaintiff was not informed about the investigation into the missing voids prior to his suspension, this does not defeat defendants' argument that they had legitimate, nondiscriminatory reasons for suspending plaintiff's employment.  It is Wesfam's neutral policy to suspend an employee pending an internal investigation into that employee's conduct.  (Doc. 59-17, pp. 135-136).  Plaintiff has not presented evidence that defendants' proffered reasons for his suspension were unworthy of credence or merely pretextual.

Even assuming that Wesfam was not forthcoming about the true reason for plaintiff's suspension, it remains clear that the real reason — an investigation into "missing voids" — was not racially motivated.  There can be legitimate circumstances under which an employer may not want to reveal to a suspended employee the real reason for the suspension.  Here, Wesfam had a legitimate right to complete its investigation of the "missing voids" without the risk of plaintiff obstructing it.  Plaintiff is unable to show that this reason for his suspension was a mere pretext for discrimination.  For this reason, defendant Wesfam is entitled to summary judgment on plaintiff's wrongful suspension claim.

### 6.  Plaintiff's Wrongful Termination Claim

Plaintiff alleges that defendants wrongfully terminated his employment in violation of Title VII and § 1981.  To establish a *prima facie* case of discriminatory discharge, plaintiff must show (1) he is a member of a protected class, (2) he was qualified for the job from which he was discharged, (3) that he was discharged, and (4) that either his former position was filled by someone not in his protected class, that he was terminated while others having comparable or lesser qualifications and not in his protected class were retained, or that he was subject to a different application of work or disciplinary rules.  *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995); *Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir. 1982); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether those employees were involved in or accused of similar conduct and were disciplined in different ways.  *Holifield*, 115 F.3d at 1562.  Plaintiff must show that he and other non-minority "comparator" employees were similarly situated in all relevant respects.  *Id.*  Should plaintiff fail to show the

existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  *Id.*

Here, plaintiff has failed to identify a proper comparator.  He argues that Melissa Cooley, a Caucasian former Wesfam assistant manager, was never disciplined for missing voids that occurred on her shifts.  However, defendants have offered evidence showing equal application of disciplinary rules despite plaintiffs arguments to the contrary.  Defendant has presented evidence that Melissa Cooley was terminated from her employment with Wesfam at Unit 4272 because of missing voids for which Wesfam believed her to be responsible.  (Doc. 59-16, pp. 51, 64-67, 80).  Further, Wesfam promptly reported Cooley to the police on suspicion of theft, supporting Wesfam's argument that it complies with its own racially neutral policies regarding termination and reporting of employees when theft is suspected.  *Id.*

Plaintiff argues that other managers had excessive missing voids occur on their shifts.  These managers are Steve Schrader, Cindy Mills, Allen Oakley, Crystal Gaitlin, Melissa Cooley, and Jamie Rodgers.  (Doc. 71, pp. 25-27).  Although Wesfam expects some missing voids, plaintiff does not give the dollar amounts of the voids for the comparable managers, except for Schrader's, which was only $97.05.  *Id.*  This is substantially less than the more than $4,000 worth of missing voids defendants attributed to plaintiff's shifts.  Further, plaintiff does not allege exactly how these managers may have been disciplined except to say that they were not terminated.  As defendants have noted, they expect a certain amount of unaccounted-for voids to occur on a shift, but that $4,000 worth was excessive and worthy of suspicion.  In addition, defendants have shown that Cooley, in fact, was terminated and reported to the police because of her missing voids.  (Doc. 59-16, pp. 51, 64-67, 80).

Plaintiff argues that defendants had no rational reasons for believing him, as the general manager, to responsible for the missing voids. He spends much time and space in his summary judgment response attacking defendants' proffered reasons for his termination and reporting to police as illogical and false, characterizing their arguments as claiming falsely that he was the only manager on duty during the shifts when the missing voids occurred. However, defendants argue that plaintiff was the general manager in charge of verifying all voids for all shifts during the days in question, not merely that he was the only manager on duty at the time voids occurred. Defendants have submitted the drawer break worksheets for the days in question, and the initials of the manager who signed off on the drawer breaks for those days were "TG," indicating that plaintiff was, in fact, the general manager on duty responsible for verifying all voids for those days. (Doc. 54-4; Doc 59-1, § 400.070).

Even assuming arguendo that defendants' proffered reasons for terminating plaintiff are illogical or mistaken, it is not the function of the court to second guess defendants' business decisions. An honest yet mistaken belief in a nondiscriminatory reason for termination offered by an employer will provide a sufficient basis for that termination even if the reason offered is foolish, trivial, or outright baseless. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999)*; Boyd v. Province Healthcare Co., Inc.*, CIV.A. 04-0825-WSD, 2005 WL 3132394 (S.D. Ala. 2005). The question is not whether the employer makes a foolish or illogical decision; rather, employment decisions are actionable only if they are motivated by an illegal discriminatory animus. Defendants have presented evidence that they honestly believed, and still believe, that plaintiff was responsible for the missing voids and may have committed theft. Plaintiff has not rebutted that evidence to show that defendants' actual motivation was discriminatory.

For the aforementioned reasons, defendants are entitled to summary judgment on plaintiff's wrongful termination claim. Under the totality of the circumstances, plaintiff's discrimination claims under Title VII and § 1981 do not withstand scrutiny under summary judgment standards, and defendants' motion is due to be granted as to these claims.

## B. Retaliation Claims

Plaintiff alleges that defendants retaliated against him in violation of Title VII and Section 1981 by (1) failing to promote him to supervisor, (2) failing to transfer him to another restaurant location, (3) unfairly criticizing his job performance, (4) creating a hostile work environment, (5) wrongfully suspending and terminating him, and (6) providing false information to the Athens Police Department and District Attorney's Office, at various times after he had complained about what he perceived to be racial discrimination. In addition, plaintiff claims that defendants retaliated against him for complaining about his pay in violation of the Equal Pay Act. Defendants argue that plaintiff has failed to establish a *prima facie* case of retaliation under the relevant statutes and that summary judgment should be granted in their favor. For the reasons set forth below, the court agrees with defendants and finds that summary judgment is due to be granted.

The standard of proof for retaliation claims is the same under Title VII, § 1981, and the Equal Pay Act. *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989); *Standard*, 161 F.3d at 1330. To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) there is some causal connection between these two events. *Meeks*, 15 F.3d at 1021; *Thomas v. Cooper Lightning, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). Whether or not an employment action is adverse and whether

there exists a causal connection are analyzed under an objective framework, requiring a "reasonable belief" that the action was adverse and that a causal connection exists. *Thomas*, 506 F.3d at 1363.

For an expression of opposition to be considered statutorily protected, the plaintiff must have a good faith, reasonable belief that defendants engaged in unlawful discrimination. *Rollins v. State of Fla. Department of Law Enforcement*, 868 F.2d 297, 400 (11th Cir. 1989); *Little*, 103 F.3d at 960. This is both a subjective and objective test. *Little*, 103 F.3d at 960. In the context of opposition to racial slurs, plaintiff must show that the employer knew or should have known about the alleged racial actions and failed to take prompt remedial action. *Id.* at 959.

Plaintiff argues that his protected expressions were (1) complaining about Herbison's use of a racial slur, (2) complaining that he was not promoted in May 2008, (3) complaining about Pierce's use of a racial slur, (4) complaining that he was not promoted in July 2008, (5) complaining that he was paid less than similarly situated Caucasian managers in August or September 2008, (6) complaining that he was not promoted in November 2008, and (7) complaining about Simmon's use of a racial slur. As a threshold matter, it should be noted that most of these complaints occurred months before plaintiff was suspended and then terminated in December 2008. Although the causal link element of a *prima facie* showing requires only that plaintiff show that the protected expressions and the adverse employment action are not wholly unrelated, passage of a significant amount of time between a protected expression and the adverse employment action tends to undermine the causal nexus between the two. As the court of appeals has explained:

> To establish *prima facie* the causation element of a retaliation claim, the plaintiff need only show that his protected activity and the adverse employment action are not completely unrelated. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). A plaintiff satisfies this element by showing that the decision-maker knew of the protected activity, and that a close temporal proximity existed between this awareness and the adverse employment action. *Id.* A close temporal proximity between the decision-maker's awareness and the adverse employment action is

> sufficient circumstantial evidence of a causal connection to establish a *prima facie* case. *Id.* Standing alone, a one-month interval may satisfy the plaintiff's burden, while a three-month interval may be insufficient. *See id.* at 1220–21. When an employer contemplates a given action before the employee engages in a protected activity, however, temporal proximity between that action and the employer's knowledge of the protected conduct alone will not suffice to show causation. *See Cotton v. Cracker Barrel Old Country Store, Inc.,* 434 F.3d 1227, 1232 (11th Cir. 2006).

*Castillo v. Roche Laboratories, Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012); *Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011) ("If there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation."), citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

In this case, the first five instances of protected expression identified by the plaintiff occurred more than three months before his December 16, 2008, suspension. There is no evidence that Wesfam was contemplating any action against plaintiff until November 2008, at the earliest, when Wyckoff noticed the consecutive days of losses in "angus" products at plaintiff's store. The complaints expressed in May, June, and August or September are not sufficiently close in time to plaintiff's suspension and termination in December to support a causal link absent some other evidence of retaliatory motive. Because there is no such other evidence, the first five of the complaints made by plaintiff have no causal nexus with plaintiff's suspension and termination sufficient to create a *prima facie* showing of retaliation.

The court will now address each of the alleged retaliatory acts on the part of defendants.

### 1. Failure to Promote Claim

Plaintiff alleges that defendants retaliated against him with discriminatory animus by failing to promote him. As fully set forth above, plaintiff's discrimination claim for failure to promote

cannot withstand summary judgment because there is no evidence of discriminatory animus as a motivation for defendants' failure to promote plaintiff. For many of the same reasons, the retaliatory failure to promote claim cannot stand. First, all of plaintiff's Title VII retaliation claims are time-barred. Although plaintiff suffered an alleged adverse employment action, at the latest, when he was not promoted to the position given to Rose Hancock in October or November 2008, he did not file an EEOC charge of discrimination until July 15, 2009, more than 180 days after he was denied the promotion. Additionally, the allegedly retaliatory denials of promotion are time barred under § 1981, as Rose Hancock's promotion occurred on October 22, 2008, and was announced in November, 2008, more than two years before plaintiff filed suit on December 14, 2010. Given that retaliation claims under § 1981 are subject to a two-year statute of limitations under *Price*, 177 Fed. Appx. at 6-7, this claim is untimely and summary judgment is appropriate insofar as plaintiff alleges that the denials of promotion constitute retaliation.

Moreover, because Wesfam had a racially neutral policy to allowed general managers to be promoted only after serving a year at a particular location, which plaintiff had not fulfilled, plaintiff had no good-faith basis for believing that the denial of promotion was racially motivated. As such, his complaints about not being promoted also cannot serve as a predicate for a retaliation claim. His complaints were simply not protected expressions of opposition to racial discrimination.

### 2. Failure to Transfer Claim

Plaintiff alleges that defendants retaliated against him by failing to transfer him to a restaurant in Huntsville, Alabama. As discussed above, plaintiff's discrimination claim for failure to transfer cannot survive summary judgment because there is no evidence of discriminatory animus on the part of defendants in their failure to transfer plaintiff, and for the same reasons, his retaliation claim for failure to transfer cannot stand. Plaintiff was not eligible for transfer in 2008 under

Wesfam's racially neutral policy, and thus the failure to transfer does not constitute an adverse employment action.

Furthermore, for the same reasons discussed with respect to his claims of retaliatory failure to promote, these failure to transfer claims are time barred.  Plaintiff requested and was denied transfer to a Huntsville store in the summer of 2008.  He did not file an EEOC charge until a year later, in July 2009, and he did not commence this action until December 2010, more than two years after the transfers were denied.  Even of the denial of transfers could be deemed a sufficient adverse employment action for retaliation purposes, these claims are untimely and summary judgment is due to be granted in favor of defendants on this claim.

Also, as discussed above, plaintiff's complaints about denial of a requested transfer were not protected expressions of opposition to racial discrimination precisely because plaintiff could not have a good faith belief that discrimination occurred.  Under Wesfam's racially neutral policy, plaintiff was not eligible for transfer until he completed a year's service at Unit 4272.  Because he had not done so, he could not have believed that the denial of his transfer request was racially motivated.

### 3.  Criticism

Plaintiff alleges that defendants retaliated against him by unfairly criticizing his job performance.  As set forth above, plaintiff's discrimination claim for wrongful criticism cannot survive summary judgment, and for the same reasons, his retaliation claim for wrongful criticism fails.  There is no evidence that Oakley's coaching statement constituted an adverse employment action under the relevant statutes, and plaintiff could not have believed in good faith that it did.

Additionally, even if defendant Oakley's alleged criticism of plaintiff's job performance could form the basis of a retaliation claim, it is untimely.  The criticism occurred on June 1, 2008.

To the extent that plaintiff alleges that it was retaliatory, he did not file a charge of discrimination with the EEOC until more than a year later, and he did not file this suit until more than two years later, in December 2010.  Summary judgment is due to be granted in favor of defendants as to this claim.

### 4.  Hostile Work Environment

Plaintiff alleges that defendants retaliated against him by subjecting him to a hostile work environment.  As set forth above, the court finds that defendants did not create or subject plaintiff to a hostile work environment, and for this reason, plaintiff's retaliatory hostile work environment claim fails and summary judgment is appropriate.   A hostile work environment claim is indistinguishable from a retaliatory environment claim.   It is the very hostility of the work environment that amounts to the retaliation.  Thus, for the reasons explained above for rejecting plaintiff's hostile work environment claim, his retaliatory work environment claim must also fail — there is simply no evidence of a hostile work environment.

### 5.  Wrongful Suspension and Termination Claims

Plaintiff alleges that defendants retaliated against him by wrongfully suspending and terminating his employment.  At the outset, any Title VII retaliation claim is time barred because plaintiff did not file a timely charge of discrimination within 180 days of the act of retaliation.  As mentioned, many of the complaints made by plaintiff were well more than three months before his suspension and termination, and for that reason they fail to establish a causal link for purposes of a *prima facie* showing of retaliation.  Assuming that his complaints in September and November are sufficiently close in time to his suspension and termination to make a *prima facie* showing of a causal link for retaliation, defendants have proffered a legitimate non-discriminatory reason for suspending and terminating plaintiff's employment.  Plaintiff has not offered evidence sufficient to

show the reason given is mere pretext for retaliation.  In late November, defendants discovered an anomaly in the voids recorded in plaintiff's store and they began an investigation.  They identified twelve days in November and December when there were an excessive number of "missing voids" at Unit 4272.  Although plaintiff has offered evidence that other managers were on duty at the time the voids occurred, he acknowledges that, as the general manager, he remained responsible for checking the documentation of all voids.  Plaintiff simply has not shown that defendants' concerns regarding "missing voids" at his store was anything but a legitimate business concern.  He certainly has not shown that the reason proffered is a mere pretext for retaliation.  Absent some evidence showing the concern defendants had for missing voids was not the real reason for plaintiff's suspension and termination, plaintiff has not shown evidence of a pretext and, therefore, defendants are entitled to summary judgment on this claim.

### 7.  Reporting False Information to the Athens Police

Plaintiff alleges that defendants retaliated against him by reporting false information to the Athens Police Department and the Limestone County District Attorney's Office.  However, as will be discussed fully below, defendants have shown they had legitimate, non-discriminatory reasons for reporting plaintiff, and plaintiff has not shown substantial evidence that such reasons were mere pretext for retaliation.   For these reasons, this claim cannot survive summary judgment.

First, there is undisputed evidence in the record that defendants believed plaintiff to be responsible for an excessive number of "missing voids" during November and December 2008.  In November, Wyckoff noticed in the product-mix database that plaintiff's store, unlike any other, had several consecutive days of negative sales figures for "angus" products.  Negative sales indicated a large number of voided transactions.  Investigating further, Westfam located evidence of more than $4,000 worth of undocumented voids over twelve days during November and December.  The

information defendants reported to police authorities was taken directly from Wesfam's financial records of the operation of plaintiff's store.  Before reporting the information to police, defendants gave plaintiff a chance to explain the missing voids and they consulted an attorney about their options for turning the matter over to law enforcement.  The decision to report the information to law enforcement was not unique to plaintiff.  Wesfam's policy, and its actual practice, was to report suspicions of theft or misappropriation of money to police authorities, and it had done so with other employees before and after doing so with plaintiff.

Plaintiff has offered no evidence that defendants did not actually believe he was responsible for the missing voids, or that the records used to show the voids were fabricated or misconstrued. He has offered no evidence showing that the decision to report the "missing voids" to police was a pretext or anything but a legitimate response to a suspicious set of circumstances indicating the possibility of theft.  Although he points out that other stores also had missing voids, he has not refuted Wesfam's assertion that a certain amount of missing voids is expected and that they were far greater at plaintiff's store than any other.  The question here is not whether plaintiff denies responsibility for the missing voids, but whether there is any evidence showing that Wesfam and its management acted out of a retaliatory motive, rather than a legitimate business motive, when they reported the missing voids to the police authorities.  Other than quibbling over the relatively minor missing voids of other managers, plaintiff has offered no evidence that the Wesfam defendants acted out of retaliation against him rather than out of a legitimate concern that the number and amounts of missing voids at his store went beyond the usual to the suspicious.

The record evidence shows that there is no genuine issue of material fact as to plaintiff's retaliation claims under Title VII and § 1981, and summary judgment on these claims is due to be granted in favor of defendants.

## C.  Equal Pay Act Claim

Plaintiff alleges that defendants retaliated against him for complaining about his payment in violation of the Equal Pay Act.  To assert a claim of retaliation under the Equal Pay Act, plaintiff must show that, because of his gender, defendant Wesfam paid him less than female employees for equal work and for jobs requiring equal skill, effort, and responsibility which were performed under similar working conditions.  *Steger v. General Electric Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003); *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995).  The evidence in the record shows that plaintiff's claims for pay disparities are based on race, not gender[7].  Plaintiff states as much in his deposition testimony[8].  Plaintiff himself did not believe he was the subject of retaliation because of complaints about *gender* pay disparity.  In fact, plaintiff's own testimony established that his complaints were not about gender disparity, but racial disparity.  Therefore, his claim of retaliation under the Equal Pay Act fails, and summary judgment is due to be granted in favor of defendant Wesfam.

It is also worth noting that plaintiff appears to have abandoned his Equal Pay Act retaliation claim as defendants argue.  Grounds alleged in a complaint but not relied upon in summary judgment

---

[7] The court noted in its Memorandum Opinion (Doc. 42) dated May 20, 2011 that plaintiff's Equal Pay Act claim for disparate payment could survive a motion to dismiss because plaintiff alleged in his complaint and amended complaint that he was discriminated against on the basis of race and/or gender.  However, the standards of proof at the summary judgment stage are stricter than at the motion to dismiss stage.  *See Hawthorne v. Baptist Hosp., Inc.*, 448 Fed. Appx. 965, 967 (11th Cir. 2011); *Celotex*, 477 U.S. at 324; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007) (holding that to survive a FED. R. CIV. P. 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are plausible on their face); *see also Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (holding that, in order to survive summary judgment, the nonmoving party must submit evidence beyond the pleadings setting forth specific facts showing that there is an issue for trial).  At this stage, plaintiff cannot merely rely on the pleadings.

[8] In his deposition, plaintiff states that his claim pertains to "the pay that I received versus what those white employees received" and that "females just happen to be white." (Doc. 59-14, 306-07).

are deemed abandoned.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *McGinnis v. Ingram Equipment Co., Inc.*, 918 F.2d 1491, 1495-96 (11th Cir. 1990); *see also Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (11th Cir. 1999).  In their motion for summary judgment, defendants fully brief the issue of plaintiff's Equal Pay Act claim, yet plaintiff does not address their arguments in his response.  Even if plaintiff's Equal Pay Act could otherwise survive summary judgment, it is deemed abandoned.

## IV.  Plaintiff's State Law Claims and Federal Conspiracy Claim

Relying on supplemental jurisdiction, plaintiff alleges several state law claims, including abuse of process, defamation, and civil conspiracy to commit abuse of process and defamation with an accompanying federal civil conspiracy claim under § 1985(3).  The court concludes that there is no substantial evidence that defendants committed abuse of process, nor did they defame plaintiff, and thus not only do those claims fail but the conspiracy claims relying on them likewise cannot stand.  Summary judgment is therefore due to be granted in favor of defendants.

### A.  Abuse of Process Claim

Plaintiff argues that defendants committed abuse of process by having false criminal charges brought against him, providing false information to the Athens police department, and suppressing exculpatory evidence to persuade the Athens police to investigate and file criminal charges against plaintiff.  In order to make a *prima facie* showing of abuse of process under Alabama law, plaintiff must prove (1) the existence of an ulterior motive, (2) a wrongful use of process, and (3) malice. *Moon v. Pillon*, 2 So. 3d 842, 846 (Ala. 2008); *Preskitt v. Lyons*, 865 So. 2d 424, 430 (Ala. 2003); *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998).  Plaintiff has failed to meet this burden.

As a threshold matter, it appears that plaintiff may be attempting to allege a claim for malicious prosecution, although he explicitly relies on a theory of abuse of process. The two are not the same under Alabama law. The Alabama Supreme Court has drawn a distinction between to the two torts, as follows:

> "The tort of abuse of process differs from the tort of malicious prosecution; the tort of abuse of process is concerned with 'the wrongful use of process *after it has been issued*,' while the tort of malicious prosecution is concerned with 'the wrongful *issuance* of process.'" *Shoney's, Inc. v. Barnett,* 773 So. 2d 1015, 1024 (Ala. Civ. App. 1999). To establish the tort of abuse of process, a plaintiff must prove the existence of an ulterior purpose, the wrongful use of process, and malice. *Barnett,* 773 So. 2d at 1024 (citing *C.C. & J., Inc. v. Hagood,* 711 So. 2d 947 (Ala.1998)).

*Hurst v. Cook*, 981 So. 2d 1143, 1153 (Ala. Civ. App. 2007). To the extent plaintiff alleges that defendants maliciously reported him to police to *cause* the issuance of a warrant against him for theft, it appears he is pleading malicious prosecution, but that theory fails here because the theft charge against plaintiff has not, so far, ended in his favor. *Hurst v. Cook*, 981 So. 2d 1143, 1153 (Ala. Civ. App. 2007) ("To recover for the tort of malicious prosecution, a plaintiff is required to prove that the defendant, without probable cause and with malice, initiated legal proceedings against the plaintiff and that *the legal proceedings terminated in the plaintiff's favor*, yet caused the plaintiff damage.")(italics added); see also *Fina Oil & Chemical Co. v. Hood*, 621 So.2d 253, 256 (Ala. 1993). A claim for malicious prosecution has not yet accrued for plaintiff; it may accrue only after the theft charge is resolved in his favor. On the other hand, a claim of abuse of process fails because there is no evidence that defendants *used the process (warrant or indictment) after it was issued* for some ulterior purpose harmful to the plaintiff. The evidence shows that defendants turned information over to Athens police and the Limestone County District Attorney's office, who undertook an investigation and instituted a theft charge against plaintiff. There is no evidence that

the defendants then used or manipulated the "process" (warrant or indictment) for harmful purposes. The defendants exercised no authority under either document. Thus they are no liable for abuse of process under Alabama law. The record indicates that defendants merely provided the relevant documents from Wesfam's internal investigation to Lieutenant Johnson of the Athens police and had no influence or control over the resultant police investigation. (Doc. 59-10, ¶¶ 15-17). There is no evidence that the defendants "misused" the process after it was issued by police and the grand jury. Once defendants provided Athens police with the relevant documents, Lieutenant Johnson conducted his own investigation of plaintiff's cash-handling and the missing voids; there is no evidence that defendants made any additional statements to Lieutenant Johnson after his investigation began nor that they made any statements to the Grand Jury. *Id.*; (Doc. 59-12, ¶ 7). Defendants had no control or influence over the independent police investigation.

An essential element of an abuse-of-process claim is a misuse of the process after it is issued. Alabama courts have explained:

> "'"[T]he [ulterior motive] must culminate in an actual abuse of the process by *perverting it to a use to obtain a result which the process was not intended by law to effect ....*"' *Dempsey v. Denman,* 442 So. 2d 63, 65 (Ala.1983) (quoting 72 C.J.S. *Process § 120, pp. 1190–91 (1951)) (emphasis added). '"If the action is confined to its regular and legitimate function* in relation to the cause of action stated in the complaint *there is no abuse ....*"' *Dempsey,* 442 So. 2d at 65 (quoting 1 Am. Jur. 2d *Abuse of Process* § 13 (1962)) (emphasis added)."

*Haynes v. Coleman*, 30 So. 3d 420, 426 (Ala. Civ. App. 2009), quoting *Willis v. Parker,* 814 So. 2d 857, 865 (Ala.2001). In this case, there is no evidence that defendants misused the process (warrant or indictment) issued charging the plaintiff with theft; they had no control over the processing of the investigation or prosecution of the charge. Defendants simply had no opportunity to "pervert" the warrant or indictment from their regular and ordinary functions of charging a criminal matter.

Even assuming there is some view of the evidence under which the defendants used the process issued by police, plaintiff has not presented evidence sufficient to establish an ulterior motive on the part of defendants.  The record shows that Wesfam's policy is to report incidents indicating that a law may have been broken to the authorities, and Wesfam has reported at least nine other employees, including Melissa Cooley, to the police following their termination from Wesfam. (Doc. 59-16, pp. 51, 64-67, 80).  This evidence creates a substantial inference that, not only did defendants not have an ulterior motive for reporting plaintiff to the police, they did not act with malice and had a legitimate reason (compliance with Wesfam policy) for the reporting.

Defendants have provided further sufficient evidence showing they had legitimate motives for reporting plaintiff to the Athens police.  The combined negative product mix, negative sales, and missing voids occurring during plaintiff's shifts discovered during Wesfam's investigation provide an adequate basis to conclude that money had been misappropriated.  This coupled with Wesfam's aforementioned policy regarding reporting potential theft supports defendants' argument that they had legitimate motives for reporting plaintiff to the police.

Plaintiff argues that the defendants suppressed information during the investigation showing that other managers had missing voids or were responsible for the voids attributed to him.  Plaintiff asserts that the 2007 drawer break sheets would have shown that missing voids occurred at Unit 4272 prior to his tenure there, but the issue at hand involves missing voids that occurred during *his* time as general manager.  Evidence of prior missing voids would not necessarily indicate that plaintiff was not responsible for the missing voids that occurred during his shifts or supply a defense to the accusation of theft by him.  Plaintiff has failed to show how evidence of prior missing voids would prove his claims.  Even if defendants were not forthcoming with information during the

criminal investigation or prosecution, this would not show an "abuse" of the criminal process issued in the case, nor would it advance, at this stage, an as-yet-unaccrued malicious prosecution claim.

Plaintiff has not come forward with substantial evidence of every element of his abuse of process claim. He has offered no substantial evidence that the defendant "perverted" the use of the criminal processes issued against plaintiff for wrongful purposes. For this reason, summary judgment is due to be granted for defendants on plaintiff's state law abuse of process claims.

### B. Defamation Claim

Plaintiff alleges that defendants made defamatory statements to attorney Brian Jones and that defendants Wyckoff and Dockery made defamatory statements about him to the Athens police in violation of Alabama law. To prove a claim of defamation, plaintiff must show the existence of (1) a false and defamatory statement concerning him, (2) an unprivileged communication of that statement to a third party, (3) fault amounting to at least negligence on the part of defendants, and (4) either actionability of the statement irrespective of the special harm or the existence of a special harm caused by the publication of the statement. *McCraig v. Talladega Publishing Co.*, 544 So. 2d 875, 877 (Ala. 1989); RESTATEMENT (2d) OF TORTS § 558 (1977). The court finds that plaintiff has not met his burden of showing there is substantial evidence supporting one or more of the elements of his claim.

Even though plaintiff argues that defendants made defamatory statements about him to attorney Brian Jones, the record reveals that only John Wessel, Wesfam's human resources vice president, who is not a named defendant in this lawsuit, spoke to Jones regarding plaintiff. (Doc. 59-12, ¶¶ 5-6). Plaintiff argues that Wessel's communications with Jones are not privileged because Jones was not retained as counsel for Wesfam and because Wessel and Jones are friends. Neither argument is persuasive. The undisputed evidence indicates that Wessel made statements to Jones

regarding plaintiff with the expectation that those statements would be confidential, within Jones'

professional capacity, and for the purpose of securing legal advice; thus, these statements fall under

the ambit of attorney-client privilege. *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th

Cir. 1991); (Doc. 59-12, ¶¶ 5-6). Wessel's friendship with Jones does not defeat application of

attorney-client privilege. Thus, plaintiff is unable to show substantial evidence that the

communications with Jones, whether harmful to plaintiff or not, were anything other than privileged

statements made for the purpose of obtaining legal advice.

Plaintiff further alleges that defendants Wyckoff and Dockery made defamatory statements

about him to the Athens police. Defendants argue that these statements were not defamatory and are

protected by a conditional privilege against defamation. The court agrees with defendants. For one,

defendants have presented sufficient evidence to show they believed plaintiff may have committed

theft. Where a party makes a communication prompted by a duty owed either to the public at large

or to a third party, the communication is privileged if made in good faith and without malice. *Willis*

*v. Demopolis Nursing Home, Inc.*, 336 So. 2d 1117, 1120 (Ala. 1976). As noted above, the court

finds that defendants have produced sufficient evidence that they reported plaintiff to the police with

legitimate motives and after investigation, and thus fault amounting to at least negligence is lacking.

Defendants Wyckoff and Dockery conducted a reasonable investigation of missing voids at

plaintiff's store, found more than $4,000 worth of such unsupported voids over twelve days in

November and December 2008, and believed in good faith that theft might be involved.

Furthermore, if defendants suspected theft had occurred, they arguably owed a duty to the public to

report that theft to the police.

Plaintiff argues that defendants acted with malice in that they reported plaintiff to the police

in order to cover up their own racial discrimination against him. For the reasons already addressed

above, there is no substantial evidence of racial discrimination by the defendants.  Plaintiff was not treated differently than other general managers.  Although he did not receive certain promotions or transfer he requested, it remains undisputed that he was not eligible for promotions or transfers because he had not completed his one year of service at Unit 4272, a work policy applicable to all general managers.  Defendants took prompt steps to correct any incidences of racial harassment, terminating the employment of one employee and transferring two others away from plaintiff's restaurant.  Because there is no substantial evidence of racial discrimination against plaintiff, there is no circumstantial evidence suggesting that defendants were motivated by malice in reporting plaintiff's suspect theft to the police.  Therefore, the court holds that defendants' statements to the Athens police were conditionally privileged and cannot be basis of a defamation action.  Summary judgment is due to be granted in favor of defendants on this claim.

## C.  State and Federal Civil Conspiracy Claims

Plaintiff alleges that defendants conspired to commit abuse of process and defamation against him in violation of both Alabama law and federal statute 42 U.S.C. § 1985(3).  The court will first address plaintiff's state law conspiracy claim.

### 1.  State-Law Conspiracy Claim

At the outset, plaintiff appears to have abandoned his state-law conspiracy claim.  In his response to defendants' motion for summary judgment, plaintiff addresses the defendants' arguments regarding his federal conspiracy claim but not his state-law conspiracy claim.  Therefore, even if plaintiff's state-law conspiracy claim could otherwise survive summary judgment, it would likely be deemed abandoned.  *See Resolution Trust Corp.*, 43 F.3d at 599; *McGinnis*, 918 F.2d at 1495-96; *see also Brasseler, U.S.A. I., L.P.*, 182 F.3d at 892.

To make a prima facie case of conspiracy under Alabama law, plaintiff must show a combination of two or more individuals[9] to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means. *Barber v. Stephenson*, 69 So. 2d 251, 254 (Ala. 1953); *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988); *Nelson v. University of Alabama System*, 594 So. 2d 632, 634-35 (Ala. 1992). When plaintiff has failed to show an underlying wrong committed by defendants upon which a claim of civil conspiracy could be based, the conspiracy claim cannot stand. *Nelson*, 594 So. 2d at 635. As discussed above, plaintiff's claims for abuse of process and defamation, the underlying wrongs upon which his conspiracy claims are based, cannot withstand summary judgment analysis. Thus, his state law claims for conspiracy to commit abuse of process and defamation must necessarily fail. Summary judgment is due to be granted to defendants on plaintiff's state law conspiracy claim.

## 2. Plaintiff's Federal Conspiracy Claim

To make a *prima facie* claim of conspiracy under § 1985(3), plaintiff must show (1) a conspiracy (2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the law or of equal privileges and immunities under the law, and (3) an act

---

[9] Alabama follows a limited form of the intra-corporate conspiracy doctrine. If the only participants in the alleged "conspiracy" are the corporation and one of its employees, no conspiracy can exists. But, if two or more employees are involved with the corporation, a conspiracy can exist. *See Williams v. Marcum*, 519 So. 2d 473, 474-75 (Ala. 1987), where the Alabama Supreme Court stated, "Although a corporation 'may be liable for damage to a third person resulting from a conspiracy where two or more of its agents participated in the conspiracy,' *Lawler Mobile Homes, Inc. v. Tarver,* 492 So. 2d 297, 306 (Ala. 1986), there is no 'conspiracy' where the only parties to the alleged conspiracy are the corporation and one of its agents and the corporation's liability is predicated upon the theory of respondeat superior through the acts of the agent with whom it allegedly conspired. *Tuskegee Institute v. May Refrigeration Co.,* 57 Ala. App. 344, 328 So. 2d 598 (1976), affirmed in part and reversed in part, 344 So. 2d 156 (Ala.1977)."

in furtherance of the conspiracy (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Burrell v. Board of Trustees of Georgia Military College*, 970 F.2d 785, 793-94 (11th Cir. 1992). The second element requires a showing of some racial or otherwise class-based, discriminatory animus behind the conspirators' actions. *Id.* at 794. The fourth element requires a showing that the person is deprived of a right or privilege as a citizen of the United States. In this case, plaintiff has identified that right as "rights protected by federal law, specifically, the right to work in an environment free of racially-based pay disparity and other employment discrimination, and the right to complain about such unlawful conduct without retaliation." (Plaintiff's Response to Summary Judgment, Doc. 71, p.38).

Insofar as the plaintiff alleges that the defendants conspired to deprive him of rights under Title VII not to be subjected to racially discriminatory employment practices, § 1985(3) is not available as a remedy. *See Great American Federal Savings & Loan Assoc. v. Novotny,* 442 U.S. 366, 376, 99 S. Ct. 2345, 2351, 60 L. Ed.2d 957 (1979); *Larson v. School Board of Pinellas County, Fla.*, 820 F. Supp. 596, 600 (M.D. Fla. 1993). The Supreme Court observed that the right to be free of racial discrimination in *private* employment (as opposed to employment by a public entity) was created by Title VII and did not exist as a right or privilege of citizenship at the time § 1985(3) was enacted in the post-Civil War era. Moreover, Congress constructed an elaborate remedial scheme for protecting the rights created in Title VII, which remedial scheme would be undermined if the same rights could be enforced under § 1985(3), rather than through the scheme devised in Title VII. Accordingly, the Supreme Court held in *Novotny* that "[u]nimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 378, 99 S. Ct. 2345, 2352, 60 L. Ed. 2d 957

(1979).  To the extent, therefore, that plaintiff argues the purpose of the alleged conspiracy by the defendants was to discriminate and retaliate against him with respect to his *private* employment with Wesfam, he must enforce his rights through Title VII, not § 1985(3).

The same is true to the extent plaintiff alleges a racially motivated conspiracy to deprive him of rights created under the Equal Pay Act.  *See Larson v. School Board of Pinellas County, Fla.*, 820 F. Supp. 596, 602 (M.D. Fla. 1993) ("[T]he more persuasive cases have concluded that the reasoning of *Novotny* is also applicable to alleged deprivation of rights created under the Equal Pay Act."), citing *Whitten v. Petroleum Club of Lafayette*, 508 F.Supp. 765, 772 (W.D.La. 1981); *Lyon v. Temple University of Commonwealth System of Higher Education,* 507 F.Supp. 471, 478–479 (E.D.Pa. 1981).  Therefore, plaintiff's § 1985(3) conspiracy claims related to his employment by the defendants must be dismissed.

Even so, the court concludes as well that plaintiff has failed to show racial or otherwise class-based discriminatory animus motivating defendants' actions.  As discussed more extensively above, there simply is no substantial evidence that the defendants made the decisions they made and took the actions they took due to a racially discriminatory motive.  While plaintiff argues that racial discrimination can be inferred from the actions of the defendants, this rests merely on the scintilla that plaintiff is African-American and he suffered adverse employment actions.  Even assuming § 1985(3) might be used as a remedial vehicle, plaintiff must present substantial evidence that racial discrimination actually motivated the actions taken, and this requires him to show that there existed no legitimate reasons for the actions of the defendants.  If defendants acted on a legitimate, non-racial motive, the mere fact that plaintiff is a member of a protected racial class does not alone prove a § 1985(3) conspiracy.  He must present substantial evidence that, in fact, the actions taken were

not for legitimate reasons, but racially discriminatory reasons, and that he has not done.  Therefore, defendants are entitled to summary judgment on plaintiff's conspiracy claims under § 1985(3).

## V.  Plaintiff's Negligence Claim

Plaintiff has apparently abandoned his negligence claim.  Defendants fully briefed the negligence issue in their Motion for Summary Judgment, yet plaintiff's response does not address these arguments nor does it even mention his negligence claim.  The claim is therefore abandoned.  *See Resolution Trust Corp.*, 43 F.3d at 599; *McGinnis*, 918 F.2d at 1495-96; *see also Brasseler, U.S.A. I., L.P.*, 182 F.3d at 892.

Even assuming the claim is not abandoned, it has no merit.  Plaintiff alleges that defendants acted negligently toward him by failing to adequately train employees and managers to deal with matters and complaints of discrimination, by failing to take prompt remedial action regarding complaints of racial discrimination, and by failing to abide by Wesfam's own policies and procedures.  Plaintiff also alleges that defendants Wyckoff, Oakley, and Dockery negligently reported missing voids to the Athens police, indicating that plaintiff was responsible.

Under Alabama law, plaintiff may establish a negligence claim generally by showing (1) defendants owed him a duty, (2) defendants breached that duty, (3) he suffered a loss or injury, and (4) defendants' breach was the actual and proximate cause of his loss or injury.  *Zatarain v. Swift Transp., Inc.*, 776 F. Supp. 2d 1282, 1289-90 (M.D. Ala. 2011); *Lollar v. Poe*, 622 So. 2d 902, 905 (Ala. 1993).  Under this statement of the law, the issue is what duty did the defendants owe to plaintiff or breach?

Alabama is an "at-will" employment State, meaning that an employer may terminate an employee for any reason or no reason at all.  Nothing in Alabama law invests an at-will employee

with the right to insist that his employer follow its own rules or trains its employees in those rule.

Such a right would effectively overrule the "at-will" nature of employment by limiting the right of

employers to terminate employment only to specific "for cause" circumstances.  If, for instance, the

employer has promulgated certain employment rules and the employee has the right to enforce those

rules through an action alleging a "negligent" failure to follow them, the employee is no longer an

"at-will" employee, but subject to termination only for cause.  Because at-will employment can be

terminated for any reason, good or bad, or even no reason at all, employers have no duty to follow

their own rules or to train employees to follow the rules.  Absent a duty, there can be no breach of

duty sufficient to create a negligence cause of action under Alabama law.

To be clear, Title VII unmistakably imposes a duty on employers not to use racial or other

illegal bases for making employment decisions.  However, as explained at length above, the record

is replete with evidence that defendants did not breach any duty to plaintiff.  First, defendants have

provided sufficient evidence, undisputed by plaintiff, that Wesfam did and does adequately train its

employees and managers in how to deal with discrimination matters and complaints.  (Doc. 59-9,

¶¶ 4-5, Exh. 1-2).  All Wesfam employees are provided with Wesfam's policy and procedure manual

and handbook and attend a mandatory class during which they are instructed on the company's anti-

discrimination policies.  They are instructed to report all incidents of discrimination or harassment

to Wesfam's human resources department.  *Id.*; (Doc. 59-16, pp. 23-25; Doc. 59-18, p. 137).  On the

other hand, plaintiff has presented no evidence showing how such training falls short of being

reasonable or fails to reasonably prepare employees and managers for dealing with employment-

related issues.  Furthermore, defendants have presented undisputed evidence that they took prompt

remedial action after each instance of a racial utterance directly or indirectly involving the plaintiff.

It is unclear from plaintiff's allegations in his original or amended complaint how else he believes defendants negligently failed to adequately respond to complaints of racial discrimination.

Plaintiff spends much of his response attempting to show that defendants had no legitimate basis for concluding that he was responsible for the missing voids, yet defendants have offered sufficient rebuttal evidence to show their belief in his responsibility was reasonable.  The record shows that defendants undertook an extensive investigation into the missing voids and potential theft prior to terminating and reporting plaintiff.  This indicates that they acted reasonably and with due care regarding the termination and reporting.

Even if defendants were mistaken in their belief that plaintiff was the general manager responsible for the missing voids, it does not change this court's conclusion.  As long as defendants have shown they genuinely believed plaintiff to be responsible for the missing voids and conducted a reasonable investigation in order to reach that conclusion, and the evidence shows that they have, that is enough to show that they did not act negligently because they had sufficient, reasonable basis for their belief that plaintiff was responsible.  The court thus finds that defendants did not breach any duty to plaintiff.

### IV.  Conclusion

The court finds no genuine issues of material fact as to plaintiff's remaining claims for discrimination under Title VII and § 1981; his retaliation claims under Title VII, § 1981, and the Equal Pay Act; his abuse of process claim; his defamation claim; his state and federal civil conspiracy claims; and his negligence claim.  Therefore, defendants' Motion for Summary Judgment (Doc. 54) is due to be GRANTED.  A separate order granting summary judgment and dismissing this action with prejudice will be entered.

DONE and ORDERED this 31st day of January, 2013.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE